**Trace Gene ENGLAND, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 762–93.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1994.

904

Allen C. Isbell, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., J. Harvey Hudson, and Kimberly Aperauch Stelter, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge.

After a jury trial, appellant was convicted of the offense of delivery of LSD, and his punishment was assessed at five years confinement and a fine of $10,000. In his sole point of error on appeal he contended that the trial court erred in allowing admission of evidence of several extraneous offenses, ostensibly to rebut his defense of entrapment. The court of appeals agreed, and, on authority of this Court's opinion on original submission in *Bush v. State,* 611 S.W.2d 428 (Tex. Cr.App.1980), reversed and remanded for new trial. *England v. State,* 856 S.W.2d 544 (Tex.App.—Houston [1st] 1993). The court of appeals held that, because predisposition is not an issue in the defense of entrapment under V.T.C.A. Penal Code, § 8.06, evidence of extraneous misconduct is not admissible in the guise of rebuttal evidence.

One justice dissented, arguing that the extraneous misconduct admitted in this case involved other, earlier transactions between appellant and the police agent he contended entrapped him, and were admissible to show the agent did not "induce" appellant, as required to establish entrapment under § 8.06, supra, but merely provided him an opportunity to commit the crime. The courts of appeals have split on this issue. Compare *Houston v. State,* 735 S.W.2d 903, at 905 (Tex.App.—Houston [14th] 1987, pet. ref'd) and *Gilliam v. State,* 749 S.W.2d 582, at 583 (Tex.App.—Eastland 1988, no pet.). We granted the State's petition for discretionary review in order to address the question of the admissibility of extraneous misconduct evidence to rebut the defense of entrapment. Tex.R.App.Pro., Rule 200(c)(1), (2) & (5).

## I.

Appellant, eighteen years old at the time of the offense, met Victor Ayala, ten years older, at his job at a catering business in the latter part of January, 1990.[1] Ayala was on probation for a felony offense in Chambers County, and was acting as an informant for several state and county law enforcement agencies, who paid him a certain amount of money for every drug deal he successfully orchestrated, at least in part according to the quantity of drugs involved. Early in their acquaintance, Ayala testified, appellant bragged to him "about how much money he was making selling drugs." They "talked ... about LSD and ... ecstasy," and appellant told Ayala that he could come up with these. Understandably, Ayala was interested.

Appellant and Ayala worked together for several months before both left the employ of the catering business. Appellant maintained he quit at least in part because Ayala "kept bothering" him about obtaining drugs for him. The exact chronology of what followed is not entirely clear, but this much can be gleaned from the evidence admitted at trial with reasonable certainty: In the latter part of March, Ayala telephoned appellant and asked him to supply LSD for a friend of his, a college student from Beaumont, one K.C. Anderson. In fact, Anderson was a Baytown narcotics officer, working undercover. Appellant called a friend, Ben Devine, who told appellant he had no LSD. Appellant called Ayala back and told him he could not accommodate Anderson. Afterward, Ayala continued to phone appellant two to three times a day, leaving messages on his answering machine that Anderson was "coming to town and might need something," and urging appellant to call him back. Ayala testified appellant did in fact call him back twice. Appellant admitted only that he talked to Ayala on "a few" occasions, and eventually quit returning his calls. Once, Ayala reached appellant at his new job, but appellant told him he was busy, and that Ayala should call him back, or that appellant would contact Ayala later.

In May, Ayala stepped up the number of calls to appellant to as many as ten to fifteen a day, leaving messages on appellant's ma-

1. All dates hereafter are in 1990.

chine. This continued for two or three weeks, but appellant never returned Ayala's calls because by then he "didn't want anything to do with [Ayala] at all." Finally, on May 30, according to appellant, Ayala called again and appellant answered the phone before the machine picked up. He did not want to talk to Ayala, however, because he "knew why [Ayala] was calling." Ayala told appellant that Anderson was getting "very upset" and "irritated," and asked appellant to provide 500 "hits" of LSD to make her trip from Beaumont worthwhile. Appellant called Devine, who agreed to supply the needed LSD. Appellant telephoned Ayala back, but by this time Ayala had talked to Anderson, who had instructed him to insist on at least a thousand "hits." Appellant called Devine once again, who was "hesitant," but agreed to the greater quantity. Appellant and Ayala then arranged a meeting for June 1. Ayala opined that appellant had not seemed "reluctant" to set up the deal. When appellant sold the LSD to Anderson on June 1, he was arrested.

The trial court allowed the State to adduce evidence, over objection, of at least two other transactions in which appellant sold smaller quantities of LSD to Anderson at Ayala's behest on unspecified dates between February and early- to mid-March of 1990. The State devoted a substantial portion of its case in chief to proving up these earlier sales, and in none did Ayala subject appellant to any undue persuasion. During his final summation at the guilt phase of trial the prosecutor argued:

"What about the defendant's opportunity to—what's the slogan? Just say no. Did he ever just say no even one time? No, he didn't. Not even one time. Not in the first transaction where he gave approximately ten hits of LSD, sold them to officer Anderson, not in the second transaction for maybe two hundred hits of LSD, not in the third [June 1] transaction where he delivered one thousand hits of LSD did he ever say no, did he ever say: Look, Ayala, you're bugging me, leave me alone. He didn't."

Appellant did not object to this argument.

In his only point of error on appeal appellant contended that admission of the extraneous transactions was error because the State failed to establish that "the evidence was relevant for purposes other than character conformity." *England v. State*, supra, at 545.[2] The court of appeals reversed, holding that, because Penal Code § 8.06 embodies an objective test for entrapment, appellant's predisposition to commit the offense is not at issue, and therefore the trial court did indeed err to admit evidence of the extraneous transactions. For this proposition, the court of appeals relied upon our opinion on original submission in *Bush v. State*, supra.[3] Justice Wilson dissented. He argued that, while evi-

---

**2.** As opponent of the evidence at trial, appellant did not request any articulation of the State's theory of relevance of the extraneous transactions. See *Montgomery v. State*, 810 S.W.2d 372, at 387 (Tex.Cr.App.1991) (Opinion on rehearing on Court's own motion). Nor did the trial court cause the record to reflect its reasons for admitting them over appellant's objections. We note that the trial court did include an instruction to the jury in the jury charge that it was to consider evidence of the extraneous transactions "only ... in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose." Despite this instruction, the parties framed the issue in the court of appeals in terms of whether the extraneous offenses were admissible to rebut the defense of entrapment, and that is the question the court of appeals

addressed. Given that posture of the case, we will inquire whether the extraneous transactions were relevant to rebut any material aspect of appellant's entrapment defense.

**3.** On original submission in *Bush* the Court reasoned:

"The State correctly points out that during his pre-trial testimony, appellant admitted making at least four other drug sales to [the undercover officer in the case for which Bush was then on trial]. It contends that this admission constitutes rebuttal evidence which the trial court could consider in determining whether the informants actions unlawfully induced appellant to engage in the conduct charged, or merely afforded him an opportunity to commit the offense. But, as previously noted, the appellant's predisposition to engage in the offense is no longer a consideration of the test of entrapment. Therefore, evidence of

dence of extraneous transactions were irrelevant on a theory that it shows predisposition and therefore rebuts entrapment, it may be admissible for other purposes. Here, because the extraneous transactions occurred between appellant and Anderson prior to the offense on trial, they were admissible to inform the question "whether [Ayala's] acts did, in fact, induce appellant to commit the crime as charged." *England,* supra, at 546 (Wilson, J., dissenting). Reliance upon *Bush* is misplaced, Justice Wilson continued, because language relied upon by the majority was rendered dicta by the Court's disposition of the cause on rehearing.[4] We might add that the decision in *Bush* preceded the effective date of the Texas Rules of Criminal Evidence.

The State makes much the same argument as Justice Wilson in its petition for discretionary review. *Bush* notwithstanding, we will treat the issue raised in this cause as a question of first impression, *viz:* Were the extraneous transactions between appellant and Anderson in this cause admissible as relevant to rebut some aspect of appellant's entrapment defense? The State echoes Justice Wilson's contention that they were relevant to show appellant was not "in fact" induced to commit the offense. The State further argues they were admissible to place the allegedly persuasive police conduct in context—a kind of *res gestae* notion. We turn first to a general discussion of the entrapment doctrine, after which we will address the State's contentions *seriatim.*

## II.

### A. Entrapment

The entrapment doctrine is a uniquely American phenomenon, unknown to the common law. For all practical purposes, it had its genesis in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). There the United States Supreme Court held as a matter of statutory construction that a penal provision could not be read to authorize prosecution for an offense that was "the product of the creative activity of" law enforcement itself. *Id.,* at 451, 53 S.Ct. at 216, 77 L.Ed. at 422. As a corollary of this holding the Court observed that the prosecution could escape the harsh remedy of acquittal if it could show that the accused had been predisposed to commit the offense, such that the conduct of law enforcement could not be said to have implanted the criminal impulse in the mind of the accused. *Id.* In a concurring opinion, Justice Roberts grounded the doctrine not on principles of statutory construction, but upon what he perceived to be the inherent authority of a court to preserve "the purity of its own temple" by denying a forum to prosecute the product of police misconduct. *Id.,* at 457, 53 S.Ct. at 218, 77 L.Ed. at 425. He opined:

> "The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents. No other issue, no comparison of equities as between the guilty official and the guilty defendant, has any place in the enforcement of this overruling principle of public policy."

*Id.,* at 459, 53 S.Ct. at 219, 77 L.Ed. at 426. Thus were born the competing views of entrapment that have since come to be described as the "subjective" and "objective" tests, respectively.

In *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the Su-

---

other criminal acts by the appellant does not rebut the claim of entrapment. *Id.* at 431.

4. On original submission in *Bush* a panel of the Court held that the defendant had raised entrapment, and the State failed to meet its burden of persuasion to show he was not entrapped beyond a reasonable doubt. See § 8.06, supra, and V.T.C.A. Penal Code, § 2.03. Thus, Bush was entitled to the functional equivalent of an acquittal, as a matter of law. 611 S.W.2d at 431. On

rehearing the Court held en banc that Bush had not met his initial burden of production to raise entrapment in the first instance, and overturned the panel's disposition. *Id.,* at 432. In doing so, however, the en banc Court had no occasion to revisit the panel's holding that the prior sales were irrelevant to show "whether the informant's actions unlawfully induced [Bush] to engage in the conduct charged." See n. 3, *ante.*

preme Court adhered to the earlier subjective test of *Sorrells*. Justice Frankfurter concurred in the result, but called for a reexamination of the underlying principle behind the entrapment doctrine, embracing Justice Roberts' view in *Sorrells* that the subjective test unjustifiably shifts the focus of inquiry away from an objective scrutiny of the conduct of law enforcement agents, asking instead whether the target of their conduct was nevertheless predisposed to commit the crime. Moreover,

> "in proof of such a predisposition evidence has often been admitted to show the defendant's reputation, criminal activities, and prior disposition. The danger of prejudice in such a situation, particularly if the issue of entrapment must be submitted to the jury and disposed of by a general verdict of guilty or innocent, is evident. The defendant must either forego the claim of entrapment or run the substantial risk that, in spite of instructions, the jury will allow a criminal record or bad reputation to weigh in its determination of guilt of the specific offense of which he stands charged."

356 U.S. at 382, 78 S.Ct. at 826, 2 L.Ed.2d at 857. See also *United States v. Russell*, 411 U.S. 423, at 443–44, 93 S.Ct. 1637, at 1648, 36 L.Ed.2d 366, at 380 (1973) (Stewart, J., dissenting).

It is possible to make rational policy arguments in support of either a subjective or an objective test for entrapment; indeed, it can be rationally argued that a mixed subjective/objective test is best, or that the doctrine should be abandoned altogether. See R. Park, The Entrapment Controversy, 60 Minn.L.Rev. 163 (1976). When this Court first judicially recognized the doctrine of entrapment *per se*, it adopted a subjective test. *Cooper v. State*, 162 Tex.Cr. 624, 288 S.W.2d 762 (1956). With the advent of the 1974 Penal Code, the doctrine was codified for the first time in Texas. The Legislature was called upon to make a policy decision.

## B. Section 8.06

Section 8.06, supra, reads:

> "(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording an opportunity to commit an offense does not constitute entrapment.
>
> "(b) In this section, 'law enforcement agent' includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents." [5]

We have said on a number of occasions that with § 8.06 the Legislature adopted an "objective" test for entrapment. That is to say, once it is determined that the accused was "induced," the only issue left to be resolved is "the nature of the police activity involved, without reference to the predisposition of the particular defendant." *Rodriguez v. State*, 662 S.W.2d 352, at 355 (Tex.Cr.App.1984); *Johnson v. State*, 650 S.W.2d 784, at 788 (Tex.Cr.App.1983); *Norman v. State*, 588 S.W.2d 340, at 346 (Tex.Cr.App.1979). The hallmark of a purely objective test for entrapment is the hypothetical person. Once the defendant can show he has been the target of persuasive police conduct, regardless of whether he was in fact persuaded to commit an offense, the focus is directed to the police conduct itself. The question becomes whether the persuasion used by the law enforcement agent was such as to cause a hypothetical person—an ordinarily lawabiding person of average resistance—to commit the offense, *not* whether it was such as to cause the accused himself, given his proclivities, to commit it.

## C. Relevance

The Penal Code designates entrapment as a "defense." This means "[t]he issue ... is

5. The trial court in this cause instructed the jury that Ayala was a "person acting in accordance with instructions from" a law enforcement agent as a matter of law. Whether that was a correct instruction on the facts of this case is not before us.

not submitted to the jury unless evidence is admitted supporting the defense." V.T.C.A. Penal Code, § 2.03(c). Once the accused has met this initial burden of production of evidence, however, the burden of persuasion then falls on the State, and "the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." § 2.03(d), supra.

 Subject to exceptions not applicable here, all relevant evidence is admissible in a criminal prosecution. Tex.R.Cr.Evid., Rule 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Cr. Evid., Rule 401. Where entrapment is an available defense, whether the accused "engaged in the conduct charged because he was induced to do so" by a law enforcement agent, and whether that agent used "persuasion or other means likely to cause persons to commit the offense[,]" § 8.06(a), supra, are facts of consequence to the determination of the action, under Rule 401, supra. Any evidence tending to make either "inducement" or "persuasion" more or less likely than it would be without that evidence is therefore admissible under Rule 402, supra.

 Moreover, while "other crimes, wrongs, or acts" are not admissible to the extent they are tendered only for their value as character conformity evidence, they may be admissible either to establish or rebut the defense of entrapment to the extent they can be said to be relevant to the issues of "inducement" and/or "persuasion." See *Montgomery v. State*, 810 S.W.2d 372 (Tex.Cr. App.1991) (Opinion on rehearing on Court's own motion). Thus, we must reject the *categorical* conclusion in our opinion on original submission in *Bush v. State*, supra, that because § 8.06 looks to the conduct of the police rather than that of the accused, evidence of extraneous misconduct can never be admissible to rebut entrapment.

Our rejection of the dicta in *Bush* undercuts the rationale of the court of appeals

majority in this cause. We must proceed, however, to decide whether the extraneous offenses in this cause were admissible to rebut entrapment in that they were relevant to show either "inducement," as Justice Wilson believed, or "context of the persuasion," as the State also urges.

*III.*

*A. Inducement*

 The State argues the extraneous transactions between appellant and Anderson were relevant to show appellant was not "induced, in fact" by Ayala's conduct to deliver LSD to Anderson on June 1. Absent evidence of the prior transactions, the State maintains, the jury's decision whether appellant was actually induced by Ayala's persistence would not be fully informed. In order to examine this contention, we must decide what § 8.06(a) means when it requires the accused to show that he "engaged in the conduct charged because he was induced to do so by" a law enforcement agent. Must he present evidence that he was "induced" in fact? If so, then any evidence to show he was *not* in fact induced would surely be relevant to rebut the defense. Moreover, any extraneous transactions relevant to this question would be admissible under Rule 404(b).

What the State thus advocates, in essence, is that in § 8.06(a) the Legislature actually enacted a mixed subjective/objective test for entrapment. Requiring an accused to show he was induced in fact would indeed re-inject a subjective element into the test. To be sure, an accused would still be required to prove under § 8.06(a) that the conduct of the police was such as to induce a hypothetical person of ordinary lawabiding nature to commit the crime. To this extent the provision remains partly "objective." In every case, however, the State would be allowed to respond with evidence that the accused was predisposed to commit the crime, to rebut the inference that because the police used tactics that might persuade an otherwise lawabiding hypothetical person to commit the

crime, the accused was in fact so induced. This construction would allow not just evidence of extraneous transactions between the accused and the law enforcement agents involved in the charged offense, as Justice Wilson and the State both contend, but also evidence of any similar extraneous misconduct that was relevant to show the accused needed no persuasion to commit such an offense, and therefore was not actually induced to do so. In this way two major goals of a purely objective test would be frustrated at once. First, police misconduct—persuasion of such a nature as to cause ordinarily lawabiding persons to commit a crime— would go unchecked because in the particular instance it might be inferred, because of the predisposition of the accused, that the improper persuasion was not the real impetus for the offense. Second, potentially confusing and prejudicial evidence of extraneous misconduct would be admissible to show predisposition, something that advocates of an objective test for entrapment have decried from the start. *Sherman v. United States,* supra (Frankfurter, J., concurring); *United States v. Russell,* supra (Stewart, J., dissenting).

Because heretofore we have steadfastly construed § 8.06 to adopt an objective test for entrapment, we were initially skeptical of the State's and Justice Wilson's contention in this cause. However, following careful scrutiny of the text of § 8.06, and a re-examination of the caselaw construing it, we now conclude that it does codify a mixed subjective/objective test for entrapment after all. Anticipating that this conclusion will come as no small surprise to the bench and bar, we take pains to explain.

### i. Entrapment

It is beyond peradventure that the drafters of the Model Penal Code opted for an objective test for entrapment. Section 2.13, A.L.I. Model Penal Code (1985) provides, in pertinent part, that a law enforcement agent:

"perpetrates an entrapment if ... he induces or encourages another person to engage in conduct constituting [an] offense by ... employing methods of persuasion or inducement that create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it."

The word "induces" in this context is somewhat ambiguous. In ordinary English we usually think of "induce" as meaning, e.g., "to lead on; move by persuasion or influence". Webster's New Collegiate Dictionary (1979), at 583. If the object of the intended inducement is not actually "led" or "moved," we would not ordinarily say he has been "induced." On the other hand, that one "induces" another might in limited contexts mean he subjects another to persuasion or other conduct meant to influence, whether he is ultimately successful at it or not. The pairing of "induces" with "encourages" in § 2.13 suggests that the object of the conduct need not actually have been persuaded for entrapment to lie. And indeed, the Explanatory Note to § 2.13 makes it evident that the drafters of the Model Penal Code intended this latter, more inchoate notion of inducement. Thus, a defendant who has been subjected to police conduct that is intended to persuade has been entrapped, in contemplation of § 2.13, as long as the persuasive conduct was of a kind that "creates a substantial risk that ... an offense will be committed by persons other than those who are ready to commit it." It need not be shown, under this purely objective understanding of entrapment, that but for the persuasiveness of the police conduct the accused would not have committed the offense. He need only have been the object of persuasive police conduct; if that conduct was such as to persuade a hypothetical person not otherwise "ready" to commit an offense, he has been entrapped, whether he was "induced" in fact or not.

In 1970 the State Bar Committee on Revision of the Penal Code submitted a similar provision to the Legislature. Section 8.05 of the Texas Penal Code, A Proposed Revision, State Bar Committee on Revision of the Penal Code, (Final Draft 1970), at 71–72, pro-

vides, in relevant part, that it is a defense to prosecution that a law enforcement agent:

"induced the commission of an offense ... by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. However, there is no defense under this section if the [police agent] merely afforded the actor an opportunity to commit the offense."

That a law enforcement agent "induced" an accused to commit an offense carries the same ambiguity here as did the word "induces" in § 2.13 of the Model Penal Code. As with the Model Penal Code, however, the Committee Comment to § 8.05 makes it clear that the inducement element was not intended to introduce a subjective component into what was otherwise meant to be an objective test. The Comment suggests that the "inducement" requirement was simply meant to ensure that the accused was actually subjected to overtly persuasive conduct, as opposed to having been merely afforded an opportunity to commit the offense. "First, as in prior law, the police conduct must 'induce' the commission of a crime; as the second sentence of Subsection (a) emphasizes, one who merely takes advantage of an opportunity provided by the police is not entrapped." Comment, at 73. By this understanding, an accused was "induced" to commit an offense if he was the object of police tactics rising to the level of active and overt persuasion, more than mere temptation. This is a purely objective construction of the "inducement" requirement, focusing not on whether the accused was in fact persuaded, but rather, simply whether the conduct directed at him amounted to persuasion. Thus, what was submitted to the Legislature in 1970 was

unquestionably a thoroughly objective test for entrapment, notwithstanding the ambiguity inhering in the word "induced."

### ii. Section 8.06

What emerged from the Legislature in 1974, however, is not so demonstrably a purely objective standard. Two changes to the substantive test for entrapment were made from the 1970 proposed version. First, a change was made to the articulation of the hypothetical person, the clearly objective component to the test. Whereas § 8.05 of the 1970 proposed code had inquired whether police used "methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it[,]" § 8.06 was revised to now ask whether police used "persuasion or other means likely to cause persons to commit the offense." We do not construe this change to have affected the objective component of the test in any way relevant to our present inquiry.[6] More important for present purposes, the Legislature also altered the language setting out the threshold "inducement" element. Rejecting the requirement of § 8.05 that for entrapment to lie, a law enforcement agent must have "induced the commission of an offense," the Legislature instead required a showing "that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent."

This Court's conclusion that § 8.06 promulgated an objective test for entrapment derives from the panel opinion on original submission in *Langford v. State,* 571 S.W.2d 326 (Tex.Cr.App.1978).[7] In that opinion, and in every other opinion construing § 8.06

---

**6.** We have rejected the argument that this change effectively abolished any objective component altogether from the defense of entrapment under § 8.06. *Rodriguez v. State,* supra, at 356 (McCormick, J., dissenting). The Court's past holdings that the statute embraces an objective component, although arrived at tortuously, see n. 7, *post,* are undoubtedly correct.

**7.** *Langford* was "overruled" by the Court en banc on rehearing. *Langford v. State,* 578 S.W.2d 737 (Tex.Cr.App.1979). Nevertheless, the panel's conclusion that § 8.06 entails an objective test

for entrapment was said in later cases to have survived. *Bush v. State,* supra, at 429 & n. 2; *Rodriguez v. State,* supra, at 355 & n. 6. We have regarded that conclusion as gospel ever since.

The story of how the panel drew its conclusion in *Langford* is, however, a comedy of errors. Judge Phillips announced, without attribution, that § 8.06 was "derived" from a New York statute. It is true that the New York entrapment statute is similar to § 8.06, most notably in its requirement that the accused show he "engaged in the proscribed conduct because he was induced ... to do so." See 571 S.W.2d at 329, n.

since, the Court has failed to take note of the change in language setting forth the "inducement" element. The Practice Commentary following § 8.06 largely echoes the Committee Comment to § 8.05 of the 1970 Proposed Code, especially in its insistence that an objective test was intended. Nevertheless, while the Practice Commentary does observe several modifications from § 8.05 to § 8.06, it is strangely mum regarding the new "inducement" language. We cannot presume, however, that the Legislature intended to accomplish nothing by the change.

■ Had the Legislature wanted to resolve the ambiguity in the word "induce" definitively in favor of an understanding, in keeping with its preferred usage in ordinary English, that it means to actually persuade or influence, not simply to engage in conduct that has as its purpose to persuade or influence, it could hardly have chosen language

more suitable to that purpose than that which is expressed in § 8.06. That the actor engaged in the conduct charged *because* he was induced to do so by an agent of law enforcement can only mean that, but for the persuasive aspect of the police conduct, the actor would not have engaged in the charged conduct. Cf. *State v. Rockholt,* 96 N.J. 570, 476 A.2d 1236 (1984) (New Jersey embraces both subjective and objective test for entrapment, where statute inquires whether police induced accused "and, as a direct result, cause[d]" him to commit an offense, using persuasion that would induce a hypothetical person not otherwise "ready to commit it."); *Munoz v. State,* 629 So.2d 90 (Fla.1993) (Florida statute containing same language as New Jersey statute construed to establish purely subjective standard).[8] This Court will effectuate the plain meaning of a statutory provision unless to do so would reap absurd

2. But Judge Phillips did not notice this particular similarity. He did notice that the New York statute contained language, similar to that in the Model Penal Code and § 8.05 of our 1970 Proposed Penal Code, requiring that the police persuasion be "such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it." This language is manifestly intended to produce an objective, hypothetical person test, focusing on the nature of police conduct. Nevertheless, the New York courts managed to construe it to create a subjective test, opining that the "person" referred to in the statute was not a hypothetical one, but the accused himself! *People v. Calvano,* 30 N.Y.2d 199, 331 N.Y.S.2d 430, 282 N.E.2d 322 (1972); *People v. Isaacson,* 56 A.D.2d 220, 392 N.Y.S.2d 157 (1977). See also, *Bailey v. People,* 630 P.2d 1062 (Colo.1981). From this premise, Judge Phillips reasoned:

"When our statute is compared to the New York provision, it is readily apparent that the drafters of our present penal code intentionally omitted the provision that 'the offense would be committed by a person not otherwise disposed to commit it.' Since this provision is the one upon which the 'subjective' test is founded, it can only be concluded that the legislative intent was to adopt the 'objective' test for entrapment."

*Langford,* supra, at 329. Thus, ironically, if we credit Judge Phillips' account, it appears the Legislature accomplished the enactment of what is at least partially an objective test for entrapment in § 8.06 by *deleting* language from § 8.05 of the 1970 Proposed Code manifestly intended to *adopt* an objective test! Is it any wonder that Judge McCormick would later argue § 8.06 does not promulgate an objective test at all? *Rodriguez v. State,* supra (McCormick, J., dissenting).

In any event, it seems Judge Phillips gave little if any consideration to the possibility that, in borrowing the "because he was induced" language from the New York provision, the Legislature meant to adopt a mixed subjective/objective test for entrapment. Nor has the Court addressed that possibility at any time since the panel opinion in *Langford.*

8. A handful of other jurisdictions have employed the "because he was induced to do so" formulation of the inducement element in their entrapment statutes. Of those statutes, two appear to be wholly subjective on their faces. See Del. Code Ann., tit. 11, § 432 (1987); Or.Rev.Stat. § 161.275 (1971). Three others have been deemed wholly subjective despite other language in the statute manifestly intended to adopt at least an objective component. See *Bailey v. People,* 630 P.2d 1062 (Colo.1981), construing Colo. Rev.Stat.Ann. § 18–1–709 (1990); *People v. Calvano,* 30 N.Y.2d 199, 331 N.Y.S.2d 430, 282 N.E.2d 322 (1972), construing N.Y. Penal Law, § 40.05 (1987); *State v. Little,* 121 N.H. 765, 435 A.2d 517 (1981), construing N.H.Rev.Stat.Ann. § 626:5 (1986). Only one statute using the "because ..." formulation has been interpreted to set out a wholly objective test. In *State v. Anderson,* 58 Haw. 479, 572 P.2d 159, at 162 (1977), the Hawaii Supreme Court declared that "[t]he language of [Haw.Rev.Stat.] § 702–237 [1976] fully comports with the objective view of entrapment." Like this Court's opinion in *Langford,* however, the Hawaii court focused on that part of its statute unquestionably intended to adopt an objective component, i.e., hypothetical "persons other than those ready to commit" the offense, but failed altogether to address the significance of the language chosen to express the inducement element of the statute.

results. *Boykin v. State*, 818 S.W.2d 782 (Tex.Cr.App.1991).

There is nothing inherently absurd about requiring that an accused who claims entrapment show both that he was in fact induced, and that the conduct that induced him was such as to induce an ordinarily lawabiding person of average resistance. Such a dual requirement would reflect, on the one hand, a policy decision that the extreme remedy of acquittal should be reserved only for police persuasion that is a but/for cause of an offense. On the other hand, the Legislature might also justifiably have believed that persuasion sufficient to actually induce an accused ought not to result in his acquittal—is not, indeed, improper—unless it would also have induced an ordinarily lawabiding person of average resistance. By incorporating both a subjective and an objective component into the test for entrapment, the Legislature could thus narrow application of the doctrine at both ends. Other jurisdictions have adopted similarly mixed tests for entrapment. E.g., *State v. Rockholt*, supra; *Baca v. State*, 106 N.M. 338, 742 P.2d 1043 (1987); cf. *Cruz v. State*, 465 So.2d 516 (Fla.1985)

(Court judicially fashions mixed test, later supplanted by statutory subjective test, see *Munoz v. State*, supra). It has also been endorsed as a viable alternative by at least one prominent commentator in the field. *The Entrapment Controversy*, supra, at 273; see also P. Markus, The Entrapment Defense § 5.04 (1989), at 180–84. It would hardly seem absurd, therefore, to construe § 8.06 to embrace a subjective/objective test for entrapment.

Judged by its plain language, that is precisely what § 8.06 does.[9] We therefore hold that § 8.06 requires an accused who claims entrapment to produce evidence that he was actually induced to commit the charged offense; that is to say, that he committed the offense "because he was induced to do so."[10] Accordingly, we agree with Justice Wilson that, if evidence of appellant's prior sales of LSD to Anderson was relevant to the question whether he was actually induced by Ayala's persistent conduct, it was admissible.[11]

### iii. Relevance

■ That appellant readily agreed to sell LSD to Anderson at Ayala's instigation on

9. Thus, we construe § 8.06 according to what it does say—not, as in Judge Phillips' panel opinion in *Langford v. State*, supra, by what it does not. See n. 7, *ante*.

10. We do not mean thereby to overrule the many cases holding that § 8.06 embraces an objective test for entrapment—it does. Instead, we hold for the first time that it also embraces a subjective component, *viz:* whether the accused himself was actually induced to commit the charged offense by the persuasiveness of the police conduct.

11. Judging by Part I of his dissenting opinion, Judge Maloney clearly favors a purely objective test for entrapment. Indeed, the various separate opinions in *Sorrells, Sherman* and *Russell*, all supra, all make forceful arguments for preferring a purely objective test. Once the Legislature has spoken on the matter, however, it is no longer a question of policy to be resolved by this Court. Ours is but to construe the legislative enactment.

Which brings us to Judge Maloney's contention, in Part II of his dissent, that we have employed a faulty methodology for construing § 8.06(a), supra. Judge Maloney believes we have violated the rule of statutory construction endorsed in *Boykin v. State*, supra, by manufacturing a false ambiguity in § 8.06(a), and then

resorting to extra-textual sources to resolve it to our liking. Op. at 908. That is demonstrably not the case. We did note that in context of § 2.13 of the Model Penal Code and § 8.05 of the 1970 Proposed Penal Code Revision, the word "inducement" "is somewhat ambiguous." See *ante* at 11. In that context, it is appropriate to resort to extra-textual sources, such as committee notes and practice commentaries, for a clue to resolving the ambiguity. Consulting those sources, we construed §§ 2.13 and 8.05, respectively, to embrace a purely objective test for entrapment. See *ante* at 13. Coming to § 8.06(a) of the Penal Code, however, we observed that any ambiguity that may inhere in the word "induce" in earlier drafts is resolved by the plain language of the provision that was ultimately enacted, which requires a showing that the accused "engaged in the conduct charged *because* he was induced to do so...." (emphasis added.) Because the meaning of the statute was plain on its face, we interpreted it according to that plain meaning, without resort to extra-textual sources. Ironically, it is the dissent that depends upon extra-textual sources to conclude that § 8.06(a) adopts a purely objective test, notwithstanding *its* plain language. The dissent cites the Practice Commentary for authority for that proposition, op. at 917–918 & 920, ignoring our observation, *ante* at 911–912, that the Practice Commentary does not even address the plain language we now rely on. In the premises, it is

two occasions in the months before the charged offense would indeed tend to make more probable that when he agreed to do so again on June 1, it was not "because" of the persuasive aspect of Ayala's conduct. Evidence to that effect was therefore relevant under Rule 401, and admissible under Rule 402. At any rate, the trial court's presumed judgment that it was relevant was well within *Montgomery*'s "zone of reasonable disagreement." 810 S.W.2d at 391. Moreover, the trial court could reasonably have concluded that the evidence was admissible under Rule 404(b), because it was relevant to rebut the actual inducement element of the defense, and therefore served an evidentiary function other than character conformity. The court of appeals majority was wrong to conclude, therefore, that the trial court erred in admitting the evidence.

### B. Context of the Persuasion

Once inducement is shown, the issue becomes whether the persuasion was such as to cause an ordinarily lawabiding person of average resistance nevertheless to commit the offense. This is the objective component of § 8.06. Whether the hypothetical person posited by this objective component would succumb to the persuasion used in a particular case is purely a function of the evidence that shows the facts of the persuasive conduct itself, and the jury's normative judgment about how an ordinarily lawabiding person of average resistance would respond to that conduct. Evidence of "other crimes, wrongs, or acts" would not seem to have a logical bearing on this process.

The State argues, however, that extraneous transactions may be admissible nevertheless to place the police conduct purported to be unduly persuasive in context. The State cites cases from other jurisdictions, and we have found more, that observe that even under a purely objective test for entrapment, evidence of other "transactions" between the same parties leading up to the alleged entrapment may be admissible as "context"

evidence. Indeed, one of the first courts to adopt an objective test as a matter of caselaw observed:

> "In applying the objective test we do not mean that the course of conduct between the officer and the defendant should be ignored. The transactions leading up to the offense, the interaction between the officer and the defendant, and the defendant's response to the inducements of the officer are all to be considered in judging what the effect of the officer's conduct would be on a normal person."

*Grossman v. State*, 457 P.2d 226, at 230 (Alaska 1969). Following this lead, courts from other states adopting the objective test have also noted that:

> "while the inquiry must focus primarily on the conduct of the law enforcement agent, that conduct is not to be viewed in a vacuum; it should also be judged by the effect it would have on a normally lawabiding person situated in the circumstances of the case at hand. Among the circumstances that may be relevant for this purpose, for example, are the transactions preceding the offense, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission. [citing *Grossman* ]. We reiterate, however, that under this test such matters as the character of the suspect, his predisposition to commit the offense, and his subjective intent are irrelevant."

*People v. Barraza*, 23 Cal.3d 675, 153 Cal. Rptr. 459, at 467–68, 591 P.2d 947, at 955–56 (1979). See also, e.g., *State v. Taylor*, 599 P.2d 496, at 503 (Utah 1979); *White v. State*, 298 Ark. 163, 765 S.W.2d 949, at 951 (1989); *State v. Agent*, 443 N.W.2d 701, at 703, 704 (Iowa 1989); *People v. Jamieson*, 436 Mich. 61, 461 N.W.2d 884, at 889, 896 (1990).

Thus, other jurisdictions have taken a kind of *res gestae* approach to admission of evidence to show the circumstances under which alleged police persuasion occurred. In

strange we should be accused of disregarding *Boykin.*

Texas, however, admissibility of extraneous offenses, even in the guise of "context" evidence, is now governed by Rule 404(b), supra. We have held that evidence of "other crimes, wrongs, or acts" is objectionable under Rule 404(b) when proffered only as contextual "background" evidence. *Mayes v. State*, 816 S.W.2d 79 (Tex.Cr.App.1991). Even so-called "same transaction contextual" evidence is admissible under the rule only when it is "necessary" to the jury's understanding of the offense on trial; i.e., when the offense would make little or no sense without also bringing in the same transaction evidence. *Rogers v. State*, 853 S.W.2d 29 (Tex.Cr.App.1993). It is not clear under which of these rubrics, if either, evidence of other transactions between a law enforcement agent and an accused who alleges entrapment under the objective test falls. It is certain, following *Mayes* and *Rogers*, however, that invoking "context" of the offense is not enough to justify admission of "other crimes, wrongs or acts." The State must show the misconduct has some tendency to make more or less probable a fact of consequence to determination of the issue of persuasion—or at the very least, that the character or degree of persuasion the police used cannot be fully comprehended absent evidence of the misconduct. Cf. *Rogers*, supra.

■ Turning to the instant cause, we hold that the evidence of appellant's sales of LSD to Anderson between February and mid-March is not relevant to the question of whether the persuasion (if any) Ayala brought to bear on him from late March through May was such as to cause a hypothetical person of average resistance to commit the sale of LSD on June 1. The character or degree of persuasiveness used does not depend upon the apparent willingness of the accused on other occasions. Even those jurisdictions that allow evidence of other transactions between the police and the accused as "context" evidence emphasize that the accused's subjective state of mind is not a material consideration under an objective test. E.g., *People v. Barraza*, supra. The specific conduct by which Ayala attempted to persuade appellant (if he did) to commit the charged offense began after the February to mid-March transactions, when Ayala phoned appellant in late March and asked him to sell LSD to Anderson. Though appellant declined, Ayala continued to call him with some persistence, and appellant soon quit returning his calls. Within two to three weeks of the charged offense, Ayala was leaving messages on appellant's answering machine as often as ten to fifteen times a day. We do not believe it "necessary" to a jury's objective determination whether this conduct was or was not such as to persuade an ordinarily lawabiding person of average resistance that it know that appellant had sold LSD to Anderson on other occasions. That circumstance does not alter the essential character of the subsequent persuasion, or its degree. It merely relates to appellant's own personal receptiveness, a factor that has no bearing on the willingness of the hypothetical person the objective component of § 8.06 assumes. We therefore hold that evidence of the extraneous LSD sales was not admissible in the guise of "context" evidence.

*IV.*

■ Though the extraneous transactions were not relevant to rebut the "persuasion" element of appellant's entrapment defense, they were relevant to rebut the "inducement" element, as that element reads on its face, and as we have construed it today.[12] Therefore, the court of appeals erred to hold

12. An accused under these circumstances would be entitled to a limiting instruction under Tex. R.Cr.Evid, Rule 105(a). Consistent with this provision, he could request an instruction that the jury limit its consideration of "other crimes, wrongs, or acts" to the issue of whether he in fact "engaged in the conduct charged because he was induced to do so by a law enforcement agent." Furthermore, in the vast majority of cases, such as the instant one, where evidence of "other crimes, wrongs, or acts" is not relevant to the issue whether the persuasion or other means used was "likely to cause persons to commit the offense"—that is to say, ordinarily law-abiding persons of average resistance—the accused could request that the trial court specifically instruct the jury not to consider the evidence for that purpose. Finally, the trial court should instruct

the extraneous transactions inadmissible. Because this ruling disposes of appellant's sole point of error on appeal, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

### DISSENTING OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge, dissenting.

A jury convicted appellant of delivery of LSD to his coworker, a police informant. The evidence at trial established that the police paid the informant money for every successful drug deal. The evidence further established that the informant harassed appellant about obtaining drugs for him so much that appellant quit his job. The harassment continued, however, for over two months culminating in the instant offense. During the three weeks preceding this offense, the informant repeatedly called appellant leaving as many as fifteen messages a day on his answering machine. Although appellant did not return the telephone calls, he ultimately agreed to a drug deal because, according to his testimony, he was afraid the informant would notify his mother, with whom he lived, and because he wanted the informant to leave him alone. The evidence also established that appellant was eighteen years old at the time of the instant offense and the informant was twenty-eight. Evidence that the offense occurred on the first of June 1990 was admitted. The trial court admitted evidence of two prior sales of LSD occurring in February or March of 1990 by appellant to the same informant to rebut appellant's entrapment defense. *See* Maj. op. at 905–906; *England v. State*, 856 S.W.2d 544, 544–45 (Tex.App.—Houston [1st Dist.] 1993).

The court of appeals reversed, holding that the trial court erred when it admitted evi-

dence of the two prior sales of LSD. *England*, 856 S.W.2d at 546. The court reasoned that the entrapment defense set forth in section 8.06 of the Texas Penal Code was based upon an objective standard predicated only on the nature of the police conduct, not the accused's predisposition to commit the crime. *Id.* at 545. However, one justice stated that extraneous transactions between the accused and the same informant were admissible to show the context in which the offense occurred. *Id.* at 546 (Wilson, J., dissenting).

This Court granted the State's petition for discretionary review to determine whether "other crimes, wrongs, or acts" are admissible to rebut an entrapment defense. *See* Tex.R.Crim.Evid. 404(b). Today, the majority holds for the first time that entrapment involves a mixed subjective/objective standard, maj. op. at 910, 913, and that evidence of "other crimes, wrongs, or acts" is admissible to rebut the subjective part of the entrapment defense, but not the objective part. *Id.* at 915. Because the legislature intended that our entrapment defense consist of a purely objective standard, I respectfully dissent.

### I.

In the seminal cases of *Sorrells*[1] and *Sherman*[2], five members of the Supreme Court perceived that a subjective standard should be utilized, that a defendant's predisposition was relevant to an entrapment defense, and that the Government could introduce evidence that a defendant had committed other crimes implying that the police did not in fact induce him to commit the charged crime. The concurrences of Justice Roberts in *Sorrells* and Justice Frankfurter in *Sherman* espoused an objective standard of entrapment focusing solely upon the police conduct.

the jury upon request that it is not to consider the evidence of "other crimes, wrongs, or acts" in its deliberations of the primary question whether the accused in fact committed the alleged offense. The instruction the trial court actually gave in the instant cause, however, is not appropriate where the evidence of "other crimes, wrongs, or acts" is relevant only to rebut

an element of the entrapment defense. See n. 2 *ante*.

1. *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

2. *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

In their view, a defendant's predisposition to commit a crime was totally irrelevant to an entrapment defense.

In 1973, the Supreme Court held that a defendant's lack of predisposition to commit a crime was the principal element of an entrapment defense. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In separate opinions, Justices Douglas and Stewart dissented adhering to the objective approach of the *Sorrells* and *Sherman* concurrences. The next year, while enacting a new penal code, our legislature rejected the subjective standard espoused by the Supreme Court majority, and, reacting to *Russell,* adopted a purely objective standard with the enactment of section 8.06 of the Texas Penal Code.

Section 8.06(a) provides:

(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent [3] using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Tex.Penal Code Ann. § 8.06(a). On its face, section 8.06(a) provides that an accused is the victim of entrapment if he commits an offense because the police used "means likely to cause *persons* to commit the offense." In other words, if the police conduct is such that a hypothetical person (not necessarily the accused) would commit the crime, then the accused has an entrapment defense; provided, of course, that the accused did not commit the crime merely because the police conduct afforded a hypothetical person (again not necessarily the accused) an opportunity to commit the crime.[4] *E.g., Rodriguez v. State,* 662 S.W.2d 352, 355 (Tex.Crim.App.

1984); *Johnson v. State,* 650 S.W.2d 784, 788 (Tex.Crim.App.1983).

The practice commentary to section 8.06 makes it clear that an objective standard was intended:

With few exceptions police methods of detecting crime are invisible, unconfined, unstructured, and unchecked. Some crime detection involves the encouragement or promotion of criminal conduct, occasionally by methods calculated to induce even the innocent to commit a crime.

\* \* \* \* \* \*

If the causation or inducement element is decided in defendant's favor, Subsection (a) focuses on the nature of the inducement methods. This second standard changes the focus of the entrapment defense, as previously recognized, which looked at the defendant's criminal proclivities. *The defendant's predisposition to commit the crime and, for purposes of the entrapment defense, his prior criminal record are immaterial. Rather, Section 8.06 focuses on whether, objectively considered, the inducement methods used are likely to induce one with innocent intentions to commit the crime. If the inducement attains that intensity, a determination of whether the defendant would have committed the crime with less or no encouragement ordinarily involves unsatisfactory and highly prejudicial (to the defendant) evidence, and thus has been rejected as an element of entrapment by this section.*

Seth S. Searcy III & James R. Patterson, Practice Commentary, Tex.Penal Code Ann. § 8.06 (Vernon 1974) (emphasis added); *see also* Tex.Prop.Penal Code § 8.05 committee comment (Final Draft 1970). The committee comment to section 8.05 is virtually identical to the practice commentary in the adopted penal code.

---

**3.** A " 'law enforcement agent' includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents." Tex. Penal Code Ann. § 8.06(b). The informant in this case was clearly acting as a "law enforcement agent" within the meaning of subsection (b).

**4.** Subsection (a) permits undercover police work; however, if the police do more than afford a hypothetical person the opportunity to commit a crime, the police have entrapped the defendant.

Whereas the subjective standard focuses upon the accused's criminal propensities, the objective standard is solely concerned with the propriety of police conduct. As Chief Justice Warren wrote for the majority in *Sherman:*

> The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime.

*Sherman,* 356 U.S. at 372, 78 S.Ct. at 820.[5] When police act in such a manner as to cause an accused to commit a crime, the police are no longer acting in accordance with their duty; ironically, they themselves are guilty of the offense for which they arrest the accused.[6] The fact that the police entrapped a citizen into committing a crime

> does not make him any more innocent or any less predisposed than he would be if he had been induced, provoked, or tempted by a private person—which, of course, would not entitle him to cry "entrapment." *Since the only difference between these situations is the identity of the temptor [sic], it follows that the significant focus must be on the conduct of the government agents, and not on the predisposition of the defendant.*

*Russell,* 411 U.S. at 442, 93 S.Ct. at 1648 (Stewart, J., dissenting) (emphasis added).

Justice Frankfurter observed in his concurring opinion in *Sherman:*

> a test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the

underlying reason for the defense of entrapment. No matter what the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society.

> \* \* \* \* \* \*

> Permissible police activity does not vary according to the particular defendant concerned; surely if two suspects have been solicited at the same time in the same manner, one should not go to jail simply because he has been convicted before and is said to have a criminal disposition.

> \* \* \* \* \* \*

> *The possibility that no matter what his past crimes and general disposition the defendant might not have committed the particular crime unless confronted with inordinate inducements, must not be ignored. Past crimes do not forever outlaw the criminal and open him to police practices, aimed at securing his repeated conviction, from which the ordinary citizen is protected. The whole ameliorative hopes of modern penology and prison administration strongly counsel against such a view.*

*Sherman,* 356 U.S. at 382–83, 78 S.Ct. at 826 (Frankfurter, J., concurring) (emphasis added). Evidence of a defendant's other crimes (here prior drug sales) is not relevant. Evidence of other crimes shows only character conformity which is prohibited by Tex. R.Crim.Evid. 404(b) and *Montgomery v.*

---

**5.** In *Sorrells,* Chief Justice Hughes acknowledged:

> The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to [sic] and create crime for the sole purpose of prosecuting and punishing it.

*Sorrells,* 287 U.S. at 444, 53 S.Ct. at 213 (quoting *Butts v. United States,* 273 F. 35, 38 (8th Cir. 1921)).

Justice Stewart has observed: "It is the Government's duty to prevent crime, not to promote it." *Russell,* 411 U.S. at 449, 93 S.Ct. at 1651 (Stewart, J., dissenting).

**6.** Justice Rehnquist has stated that:

> [i]f the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies ... in prosecuting the police under the applicable provisions of state or federal law.

*Hampton v. United States,* 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976) (citations omitted). However, the successful prosecution of police officers who entrap a citizen is a fiction unlikely to become reality.

*State,* 810 S.W.2d 372 (Tex.Crim.App.1991) (op. on reh'g).[7] The accused's predisposition to commit an offense as evidenced by other crimes is therefore irrelevant to an entrapment defense under section 8.06.

## II.

Neither the State nor the dissent below advocate any kind of subjective standard for entrapment, mixed or otherwise.[8] Indeed, in its petition for discretionary review, the State concedes "[i]t is, of course, well established that the Legislature codified the 'objective' standard for entrapment when it adopted Tex.Penal Code Ann. § 8.06 (1974)." State's PDR at 4 (citations omitted); *see also* State's Brief at 3. The State, nevertheless, argues in its brief here that evidence of "other crimes, wrongs, or acts" is admissible to show the context of the offense;[9] an argument the majority here correctly rejects. Maj. op. at 915.

The majority, however, announces that (1) our entrapment defense is a mixed standard including both subjective and objective elements, *id.* at 910, 913, and (2) evidence of "other crimes, wrongs, or acts" is relevant and admissible to show appellant was not *subjectively* induced into committing the instant crime. *Id.* at 915. The majority reaches its holding by determining that the "inducement" language in our entrapment statute is ambiguous, especially when compared to the "inducement" language in the 1970 proposed penal code. *Id.* at 910–912. The majority then reviews other jurisdictions and determines that a plain reading of our entrapment statute indicates that it is a mixed standard. *Id.* at 913. The majority's reasoning, however, does not follow this Court's recognized rules regarding statutory interpretation. *See Boykin v. State,* 818 S.W.2d 782, 785–86 (Tex.Crim.App.1991).

When this Court is called upon to determine legislative intent, we focus upon the statute's literal text and give effect to its plain meaning. *Id.* at 785. It is only when the plain meaning of the statute would lead to absurd results or is unclear and ambiguous that we consider "*extra* textual factors." *Id.* (emphasis in original). Otherwise, we would "invade the lawmaking province of the Legislature." *Id.* at 786. As previously mentioned, a plain reading of section 8.06(a) makes it clear that our legislature intended an objective standard for entrapment. Therefore, the majority's review of such "extratextual" sources as the 1970 proposed penal code or entrapment statutes from other states is unwarranted.

The majority seems to justify such a review because it finds that the word "induced" as used in section 8.06(a) is "ambiguous." *See id.* at 910–911. According to the majority, the word "induce" means "to lead on; move by persuasion or influence," but the ambiguity lies in whether the action must be successful or just a mere attempt. *Id.* at 910. While the word "induce" may be ambiguous in other contexts, it certainly is not here.

Under section 8.06(a), an accused is said to have been induced to commit a crime if police use "persuasion or other means *likely to cause* persons to commit the offense." A plain reading of the statute shows an entrapment defense will lie if the police conduct is likely to cause a hypothetical person to commit a crime. The statute is not concerned whether the accused himself was actually induced. Thus, the word "induced" as it is used in section 8.06(a) is not ambiguous.

Nevertheless, the majority looks to "extratextual" sources and compares section 8.06(a) to the 1970 proposed penal code. *Id.* at 911–912. The majority finds it significant that

---

**7.** It is interesting that the author of the majority opinion, who is also Montgomery's author, would interpret section 8.06 to permit such a result.

**8.** The majority incorrectly characterizes the State's argument and the dissent below as advo-

cating a mixed standard for entrapment. Maj. op. at 909, 910.

**9.** See *Rogers v. State,* 853 S.W.2d 29 (Tex.Crim. App.1993).

the proposed penal code provided an entrapment defense if the police induced the commission of the offense; whereas, section 8.06(a) provides an entrapment defense if the actor committed the offense because he was induced by the police. *Id.* at 911. Arguably, the reason for the change in language is because the language in the proposed penal code did not provide an object of the police conduct.[10]

The majority, however, suggests the legislature chose to

> resolve the ambiguity in the word "induce" definitively in favor of an understanding, in keeping with its preferred usage in ordinary English, that it means to actually persuade or influence, not simply to engage in conduct that has as its purpose to persuade or influence ...

*Id.* at 912. As stated previously, a literal reading of section 8.06(a), as well as the practice commentary to that section, provide otherwise. Entrapment occurs when police use "means likely to cause," but not necessarily causing, a hypothetical person, not necessarily the defendant, to commit the offense. Tex. Penal Code Ann. § 8.06(a). If the legislature had wanted to provide as the majority suggests, it would have explicitly provided that entrapment occurs when the police use means that actually cause the *defendant* to commit the crime.

Because the practice commentary to section 8.06(a) explicitly states that it is an objective standard, this change in language should be construed as nothing more than a change in writing style on the legislature's part. *See* Texas Law Review Manual on Style 2:6 (7th ed.1992) (use of active voice is preferred over passive voice); *see also* Reed Dickerson, Fundamentals of Legal Drafting § 8.18 (2d ed.1986); Henry Weihofen, Legal Writing Style 97–99, 111–12 (West 2d ed.1980).

The majority's proposed mixed standard is really a subjective standard. An objective standard, as the majority acknowledges, does not permit evidence of other crimes to rebut an entrapment defense. Maj. op. at 913–915. However, the majority maintains that "[i]n every case" the State should be permitted to introduce evidence of a defendant's other crimes to rebut the subjective element of his entrapment defense. *Id.* at 909, 915. If this is true, what difference does it make whether the police conduct would induce the hypothetical person? This so-called mixed standard essentially renders the objective element meaningless. This is particularly vexatious since the majority would permit, not only evidence of other crimes between the defendant and the same law enforcement agent, as argued by the State and the dissent below, but evidence of crimes involving the defendant and others as well. *Id.* at 909.

The majority cites several cases from other states interpreting their respective entrapment statutes. *Id.* at 912–913. However, because our legislature has explicitly provided that Texas has a purely objective standard of entrapment, those cases are not persuasive.

Regardless of whether one thinks the majority's proposed mixed standard is, perhaps, more palatable than a purely objective standard, the fact remains the legislature intended the entrapment defense to be an objective standard. It is not our job to change that. *See Boykin*, 818 S.W.2d at 785 ("our state constitution assigns the law*making* function to the Legislature ...") (emphasis in original); *cf. Alvarado v. State*, 853 S.W.2d 17, 28 (Tex.Crim.App.1993) (Maloney, J., dissenting) (only legislature can create exceptions to Tex.Code Crim.Proc.Ann. art. 38.23).

I would affirm the judgment of the court of appeals; because the majority does not, I respectfully dissent.

MILLER, BAIRD and OVERSTREET, JJ., join this opinion.

---

**10.** Section 8.05(a) of the proposed penal code provided: "It is a defense to prosecution that a peace officer, or a person directed by a peace officer, induced the commission of an offense...." Tex.Prop. Penal Code § 8.05(a) (Final Draft 1970). Under a literal reading of that section, the peace officer did not have to induce anyone to commit a crime.