TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00515-CR







Laura Schmidt Dow, Appellant


v.


The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. 9024077, HONORABLE JON N. WISSER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 A jury found Laura Schmidt Dow guilty of solicitation of capital murder and assessed
her sentence at fifteen years in prison. She contends on appeal that the evidence was legally
insufficient to support her conviction because sufficient evidence established that she was entrapped. 
She contends that the district court should have granted her motion for new trial and dismissed the
indictment. She complains of twelve instances in which the district court excluded evidence that
would have shown that the man whose murder she solicited--her ex-husband, Gary
Peterson--sexually assaulted her daughters and threatened her and her mother directly and through
her daughters. We will affirm the conviction.


BACKGROUND


 Dow and Peterson were married in 1983 and had four children. They had daughters
born in 1986, 1988, and 1992, and a son born in 1995. Dow came to hate Peterson. Witnesses
testified that, beginning in 1994, she asked them if they would kill Peterson or knew someone who
would. Dow denied attempting to persuade or hire anyone to kill Peterson before August 2000.

 Peterson and Dow divorced in August 1998. The court awarded Dow custody of the
two older children and Peterson custody of the two younger children. In November 1998, Dow
received information (1) from the children's therapist that caused her to seek custody of the younger
children as well; this bid failed a year later. In early 2000, Dow placed an advertisement to sell some
of the fifty-plus dogs she kept in her home. (2) Dana Bishop read the ad and called Dow to warn her
that it could attract the attention of authorities who would take away the dogs. Their conversation
eventually turned to Dow's troubles in family court. Bishop also had family troubles, and the two
bonded over their common difficulties. Dow told Bishop that Peterson had damaged her children
psychologically, and Bishop often told Dow that any man who would do that to a child did not
deserve to live. Dow asked Bishop for help in finding someone to kill Peterson. Bishop did not
think Dow was serious until Dow began contemplating how Peterson should die and how she would
fund the killing.

 After Bishop's son was arrested for drug distribution, she decided to pass Dow's plan
along to authorities in the hope that providing this information would help her son; she had been an
informant before. Texas Department of Public Safety trooper B.F. Davis contacted Dow and posed
as a murderer for hire. Eventually, Dow took out a loan on her truck and paid Davis $1000 as a
downpayment on a $3000 contract to kill Peterson.

 Dow was indicted, convicted, and sentenced to fifteen years in prison for soliciting
the murder of Peterson.


DISCUSSION


 Dow's appeal focuses on her entrapment defense. She contends that the evidence was
insufficient to disprove the defense of entrapment. She contends that the court erroneously excluded
evidence relevant to that defense, including evidence about a previous unsuccessful attempt to get
Dow to solicit Peterson's murder, allegations that Peterson sexually assaulted his daughters, and
Peterson's threats to Dow and her mother.

 Dow's first two points of error relate to the sufficiency of the evidence. In these
points, she argues that the evidence was legally insufficient to support the verdict, that the court erred
by denying her motion for new trial, and that the court erred by failing to dismiss the indictment with
prejudice. When reviewing the legal sufficiency of the evidence, we must determine whether,
viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could
have found beyond a reasonable doubt all the essential elements of the offense charged. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Skillern v. State, 890 S.W.2d 849, 879 (Tex. App.--Austin
1994, pet. ref'd). We do not realign, disregard, or weigh the evidence. See Rodriguez v. State, 939
S.W.2d 211, 218 (Tex. App.--Austin 1997, no pet.). The jury as the trier of fact is the judge of the
credibility of the witnesses and the weight to be given the testimony. See Tex. Code Crim. Proc.
Ann. art. 38.04 (West 1979); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The
verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable
doubt. See Urbano v. State, 837 S.W.2d 114, 115-16 (Tex. Crim. App. 1992); Kimberlin v. State,
877 S.W.2d 828, 831 (Tex. App.--Fort Worth 1994, pet. ref'd). We review the denial of a motion
for new trial for an abuse of discretion. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

 We measure the sufficiency of the evidence against a hypothetically correct charge. 
See Curry v. State, 975 S.W.2d 629, 630 (Tex. Crim. App. 1998). A person commits an offense if,
with intent that a capital felony or first-degree felony be committed, she requests, commands, or
attempts to induce another to engage in specific conduct that would constitute the felony. See Tex.
Pen. Code Ann. § 15.03(a) (West 2003). Dow was indicted for soliciting murder for remuneration
or the promise of remuneration, which is capital murder. See id. § 19.03(a)(3) (West 2003). 

 It is a defense to prosecution that Dow solicited murder because she was induced by
a law enforcement agent, or a person acting in accordance with instructions from an agent, using
persuasion or other means likely to cause a person to commit the offense. See id. § 8.06 (West
2003). Entrapment has both subjective and objective elements. England v. State, 887 S.W.2d 902,
913 (Tex. Crim. App. 1994). The subjective element requires evidence that "the accused himself
was actually induced to commit the charged offense by the persuasiveness of the police conduct." 
Id. at 913 n.10. Evidence that a person has committed a crime before is some evidence that a
subsequent commission of the crime was not induced by police. Id. at 914. "Once inducement is
shown, the issue becomes whether the persuasion was such as to cause an ordinarily lawabiding
person of average resistance nevertheless to commit the offense." Id. With respect to this objective
element, prohibited police conduct can include pleas based on extreme need, sympathy, pity, or close
personal friendship, offers of inordinate sums of money, and other methods of persuasion that are
likely to cause the otherwise unwilling person--rather than the ready, willing and anxious
person--to commit an offense. Flores v. State, 84 S.W.3d 675, 682 (Tex. App.--Houston [1st Dist.]
2002, pet. ref'd). When there is conflicting evidence on the issue of entrapment, the court does not
err in overruling a motion for acquittal and should charge the jury on the defense as a fact issue. 
Cook v. State, 646 S.W.2d 952, 952 (Tex. Crim. App. 1983). If a reasonable doubt exists on a
defensive issue, the jury must acquit. See Tex. Pen. Code Ann. § 2.03 (West 2003). 

 Ample evidence supports the conclusion that Dow was not entrapped into soliciting
Peterson's murder. Witnesses not affiliated with the police investigation testified that, well before
the police became involved, Dow wanted to find someone to kill Peterson. Helene Schmidt, Dow's
sister, (3) testified that in 1994 Dow asked her at least three times to kill Peterson; Schmidt thought
Dow was joking. Michael Deel, an account manager at Enflite (Dow's employer for about two
weeks), testified that in January 1998 Dow asked him on consecutive days if he knew anyone who
would kill Peterson. He said that on the first day he had stopped in her office to introduce himself
and had overheard part of an emotional telephone conversation related to her husband; after she hung
up the phone and they talked for a bit, she inquired if he knew someone who would kill Peterson. 
On the second day, Deel testified that Dow said, "[S]eriously, if you know anybody who could take
care of--take care of him, let me know." Edward Thompson, chief operating officer of Enflite,
testified that he confronted Dow after another Enflite employee reported that Dow had asked that
employee if he knew anyone who "got rid of people." Bishop testified that Dow said on numerous
occasions beginning early in their friendship that she wanted Peterson dead and asked if Bishop
knew anyone who would do it. Bishop testified that she did not initially contact police and did not
take Dow seriously until Dow began describing how she would get the money to pay the killer and
how Peterson should be killed. Evidence thus supports the conclusion that, rather than being
induced to solicit murder by police, Dow initiated the solicitation.

 Dow, however, denied that she initiated the search and insisted that she was
persuaded by Bishop and Officer Davis to continue with the plan. Dow admitted that while the
divorce proceedings were pending she told many people that she wished Peterson would die or that
someone would kill him, but denied that she ever tried to persuade or hire someone to kill him. She
said, however, that Davis was the only person she ever asked to kill Peterson. Dow testified that she
met with Davis on August 17, 2000 only after Bishop persuaded her that she (Dow) had a moral
obligation to do something. Bishop admits that she told Dow that no man who had done what
Peterson had done deserved to live. Davis said that Dow appeared to be struggling with what to do
and testified that he was ready to leave before she committed to hiring him. When Dow wavered
and said she thought maybe Peterson should just be beaten badly, Bishop told her that a beating
would not stop him. Even after agreeing to terms with Davis ($1000 down, $3000 total fee), Dow
avoided Davis by not delivering the downpayment as scheduled on August 19 and not returning his
calls; she explained that she had misplaced her cellular telephone in her truck. When she finally
answered a call from Davis on August 23, Dow says he convinced her that she was doing the right
thing because she had a moral obligation to do something; this was the only telephone conversation
between Dow and Davis that was not recorded.

 We conclude that legally sufficient evidence supports the judgment. The evidence
that Dow for years asked people--including her sister, coworkers she had just met, and Bishop--to
kill or find someone to kill Peterson supports the view that she was not induced by police to solicit
Peterson's murder. The jury was free to choose to believe those witnesses over Dow. That
credibility choice could affect deliberations on the rest of the issues as well. A reasonable jury also
could have found that a reasonable, law-abiding citizen would not have been induced to solicit
murder; the jury could either disbelieve Dow's version of events or accept it but find the comments
by Bishop and Davis were not sufficient to overcome the average resistance of a law-abiding citizen. 
Viewed most favorably to the verdict, the evidence supports the verdict.

 The evidence supporting the verdict justifies the district court's refusal to dismiss the
indictment and the denial of the motion for new trial. We overrule points one and two.

 By her remaining twelve points of error, Dow challenges the district court's exclusion
of evidence. The district court excluded certain evidence because it was irrelevant and because any
probative value was substantially outweighed by the risk of confusion of issues or misleading the
jury. Tex. R. Evid. 401-403. Evidence is relevant if it has any tendency to make the existence of
a consequential fact more or less probable. See id. 401. If the trial court erroneously excludes
evidence, we must determine whether the error was harmless. See Tex. R. App. P. 44.2. The
exclusion of a defendant's evidence is constitutional error only if the evidence forms such a vital
portion of the case that exclusion effectively precludes the defendant from presenting a defense. 
Potier v. State, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002); see also Tex. R. App. P. 44.2(a). We
must reverse for constitutional errors unless we determine beyond a reasonable doubt that the error
did not contribute to the conviction or punishment. See Tex. R. App. P. 44.2(a). If relevant evidence
is erroneously excluded, but the error does not prevent the defendant from presenting a defense, we
examine whether the error affected the defendant's substantial rights. See Potier, 68 S.W.3d at 666;
see also Tex. R. App. P. 44.2(b). Dow contends that all of the evidence excluded was relevant to
and sufficiently probative of whether she was entrapped into soliciting Peterson's murder. 

 We review a trial court's decision to exclude evidence under an abuse of discretion
standard. See Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). We will not reverse a
trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. See Green
v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). To preserve error in the exclusion of
evidence, a defendant either may call a witness to the stand outside the presence of the jury and have
him answer the specific questions defendant desires, or may make an offer of proof of the questions
he would have asked and the answers he expected to receive had he been permitted to question the
witness in the presence of the jury. See Jefferson v. State, 900 S.W.2d 97, 100 (Tex. App.--Houston
[14th Dist.] 1995, no pet.). 

 Dow first complains about exclusion of evidence that she ignored a previous attempt
to induce her to solicit Peterson's murder. Dow made bills of exceptions through the testimony of 
Peterson and Woody Edmiston, a private investigator hired by Peterson's divorce attorney. 
Edmiston said that he prepared a report given to the Austin Police Department alleging that Dow
wanted to hire someone to kill Peterson and recommending an undercover officer approach Dow to
elicit a solicitation. Peterson said that he attended a meeting with Austin Police Department officers
discussing how such an operation should proceed; Peterson testified that he did not know whether
the investigation proceeded. Dow asserted that she could call other witnesses who would testify
regarding the existence and failure of the police investigation, but she does not show and we do not
find in the record that such witnesses were called. In her testimony before the jury, Dow testified
that Peterson's private investigator hired someone to try to get her to say she wanted her ex-husband
killed. That testimony was neither objected to nor excluded.

 It is not clear that Dow has preserved this complaint for our review through offers of
proof. A party can preserve error in the exclusion of evidence by making an offer of proof--a
concise summary of anticipated testimony. Moosavi v. State, 711 S.W.2d 53, 55 (Tex. Crim. App.
1986). Dow's attorney summarized anticipated testimony, but did so while asserting he would call
witnesses who were not specifically named or called or who, when called, did not provide the
asserted testimony. (4) Testifying in bills of exception, neither Peterson nor Edmiston said that any
police investigation occurred and was thwarted by Dow's refusal; rather, Peterson said he did not
know if a police investigation occurred. 

 Dow has another preservation problem. When evidence that is admissible for one
purpose but not for another is excluded, the exclusion is not a ground for complaint on appeal unless
the proponent expressly offers the evidence for its limited admissible purpose. Tex. R. Evid. 105(b). 
Evidence of Dow's prior resistance to soliciting murder may be relevant on the subjective aspect of
entrapment, but it is irrelevant to the objective issue of whether a reasonable, law-abiding person
would have been induced to solicit murder. See England, 887 S.W.2d at 914-15. Because Dow did
not offer this evidence for the limited purpose of proving subjective inducement, she waived error. 
See Wright v. State, 776 S.W.2d 763, 765 (Tex. App.--Corpus Christi 1989, pet. ref'd). 

 More important, Dow has shown no harm from the exclusion of the evidence of prior
resistance. We have concluded that sufficient evidence supports beyond a reasonable doubt that a
reasonable person would not have been induced to solicit murder. Evidence of Dow's prior
resistance is irrelevant to this objective prong of the entrapment test. Thus, Dow was not harmed
by the exclusion of the evidence because its exclusion neither prevented Dow from presenting the
entrapment defense nor affected her substantial rights. We find no abuse of discretion and overrule
point three.

 Dow next complains about the exclusion of evidence relating to Peterson's alleged
sexual assaults of their daughters. The court excluded the following evidence: (1) testimony by
Dow's daughters' therapist that the girls reported to her that Peterson sexually assaulted them and
threatened to kill Dow and Dow's mother if the girls told anyone; (2) the therapist's testimony that
she passed the girls' report on to Dow; (3) evidence that Dow sought a protective order against
Peterson based on a recommendation by an assistant district attorney who was convinced by
videotaped interviews of the girls that Peterson assaulted the girls; (4) testimony by two Child
Protective Services workers who found the girls' accusations compelling; and (5) Dow's testimony
that, during her suit for a protective order against Peterson, she learned that (a) Peterson's attorney's
letter indicating that she had coached the girls in making their assault accusations was presented to
the grand jury that declined to indict Peterson on those allegations, and (b) the videotaped interviews
of her daughters were not presented to the grand jury. 

 Although this evidence may have some relevance to entrapment, it is highly
inflammatory. Evidence that Peterson sexually assaulted the girls and that the grand jury no-billed
him on these charges based on incomplete information may tend to show that Dow was more
susceptible to being persuaded to solicit murder. But the evidence instead could support the view
that Dow was so enraged that she needed no persuasion to solicit murder and was not induced to do
so by police tactics. Evidence that Peterson sexually assaulted their daughters is extremely
inflammatory, especially in light of the grand jury's refusal to indict him for the offenses; the
evidence could have misled the jury into considering Peterson's conduct rather than Dow's conduct
in arriving at its verdict. We cannot say that the district court abused its discretion by concluding
that the probativeness of this evidence to show that Dow was entrapped was substantially
outweighed by the risk that it would confuse the issues or mislead the jury. We find no abuse of
discretion and overrule points of error four through ten.

 Finally, Dow complains of the exclusion of her testimony that she was afraid of
Peterson, that he appeared at her house with a shotgun, and that he threatened her and her mother. 
She contends that without this evidence, and without the evidence of the sexual assault allegations,
the jury was left with the impression that her hatred of Peterson was irrational. As with the evidence
related to his alleged sexual assaults of their children, evidence of his alleged threats may have some
relevance to entrapment; however, it is not clear whether the threats make entrapment more likely
by making Dow more receptive to police suggestions or less likely by convincing her to seek a
murderer irrespective of police suggestions. The allegations that Peterson threatened violence are
inflammatory and could be misleading, especially in light of the fact that Peterson was acquitted of
assault. We find no abuse of discretion and overrule points eleven through fourteen.



CONCLUSION


 Having overruled all of Dow's points of error, we affirm the judgment. 



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: April 24, 2003

Do Not Publish

1. The evidence--reports by the children that Peterson sexually assaulted them--was
excluded from the jury and is the subject of points of error on appeal.
2. The unsanitary conditions resulting from this concentration of dogs caused Child Protective
Services to initiate some litigation against Dow, the exact nature of which is unclear from this
record.
3. Schmidt is a licensed peace officer who was not part of this investigation.
4. While making a bill of exceptions, after examining Woody Edmiston, Dow's attorney
stated as follows:


And by the way, I would tell the Court this, and we can put these witnesses on
at another time. As a result of this memo from Mr. Edmiston, Henry Bell, Gary
Peterson and Robert Reed went to the Austin Police Department and convinced
them to initiate an attempted undercover sting against Laura Peterson. They
sought out this man, Michael Jones that is mentioned in this report. They got
Michael Jones to call Laura Dow. The story goes that on the first call his--the
battery on his cell phone went out and--


 [Prosecutor]: I'm sorry to object, Judge, but were these matters
that were elicited whenever I wasn't in the room?


 [Dow's attorney]: No, I'm telling the Court that I can present
these and I will. I don't have the witnesses here today, but I'm
trying to get the Court to understand our position about the
relevance of all this.


It is not clear what witnesses Dow's attorney intended to call to provide this
evidence. Dow called Edmiston and Peterson, but neither provided the predicted
testimony. Neither side called either Henry Bell, Michael Jones, or Robert Reed
to testify.