# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00515-CR

**Laura Schmidt Dow, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. 9024077, HONORABLE JON N. WISSER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found Laura Schmidt Dow guilty of solicitation of capital murder and assessed her sentence at fifteen years in prison. She contends on appeal that the evidence was legally insufficient to support her conviction because sufficient evidence established that she was entrapped. She contends that the district court should have granted her motion for new trial and dismissed the indictment. She complains of twelve instances in which the district court excluded evidence that would have shown that the man whose murder she solicitedCher ex-husband, Gary PetersonCsexually assaulted her daughters and threatened her and her mother directly and through her daughters. We will affirm the conviction.

**BACKGROUND**

Dow and Peterson were married in 1983 and had four children. They had daughters born in 1986, 1988, and 1992, and a son born in 1995. Dow came to hate Peterson. Witnesses testified that, beginning in 1994, she asked them if they would kill Peterson or knew someone who would. Dow denied attempting to persuade or hire anyone to kill Peterson before August 2000.

Peterson and Dow divorced in August 1998. The court awarded Dow custody of the two older children and Peterson custody of the two younger children. In November 1998, Dow received information[1] from the children=s therapist that caused her to seek custody of the younger children as well; this bid failed a year later. In early 2000, Dow placed an advertisement to sell some of the fifty-plus dogs she kept in her home.[2] Dana Bishop read the ad and called Dow to warn her that it could attract the attention of authorities who would take away the dogs. Their conversation eventually turned to Dow=s troubles in family court. Bishop also had family troubles, and the two bonded over their common difficulties. Dow told Bishop that Peterson had damaged her children psychologically, and Bishop often told Dow that any man who would do that to a child did not deserve to live. Dow asked Bishop for help in finding someone to kill Peterson. Bishop did not think Dow was serious until Dow began contemplating how Peterson should die and how she would fund the killing.

After Bishop=s son was arrested for drug distribution, she decided to pass Dow=s plan along to authorities in the hope that providing this information would help her son; she had been an informant before. Texas Department of Public Safety trooper B.F. Davis contacted Dow and posed as a murderer for hire. Eventually, Dow took out a loan on her truck and paid Davis $1000 as a downpayment on a $3000 contract to kill Peterson.

---

[1] The evidenceCreports by the children that Peterson sexually assaulted themCwas excluded from the jury and is the subject of points of error on appeal.

[2] The unsanitary conditions resulting from this concentration of dogs caused Child Protective Services to initiate some litigation against Dow, the exact nature of which is unclear from this record.

Dow was indicted, convicted, and sentenced to fifteen years in prison for soliciting the murder of Peterson.

## DISCUSSION

Dow=s appeal focuses on her entrapment defense. She contends that the evidence was insufficient to disprove the defense of entrapment. She contends that the court erroneously excluded evidence relevant to that defense, including evidence about a previous unsuccessful attempt to get Dow to solicit Peterson=s murder, allegations that Peterson sexually assaulted his daughters, and Peterson=s threats to Dow and her mother.

Dow=s first two points of error relate to the sufficiency of the evidence. In these points, she argues that the evidence was legally insufficient to support the verdict, that the court erred by denying her motion for new trial, and that the court erred by failing to dismiss the indictment with prejudice. When reviewing the legal sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the jury=s verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.CAustin 1994, pet. ref=d). We do not realign, disregard, or weigh the evidence. *See Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.CAustin 1997, no pet.). The jury as the trier of fact is the judge of the credibility of the witnesses and the weight to be given the testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Urbano v. State*, 837 S.W.2d 114, 115-16 (Tex. Crim. App. 1992);

4

*Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex. App.CFort Worth 1994, pet. ref=d).  We review the

denial of a motion for new trial for an abuse of discretion.  *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim.

App. 1995).

We measure the sufficiency of the evidence against a hypothetically correct charge.  *See*

*Curry v. State*, 975 S.W.2d 629, 630 (Tex. Crim. App. 1998).  A person commits an offense if, with

intent that a capital felony or first-degree felony be committed, she requests, commands, or attempts to

induce another to engage in specific conduct that would constitute the felony.  *See* Tex. Pen. Code Ann. '

15.03(a) (West 2003).  Dow was indicted for soliciting murder for remuneration or the promise of

remuneration, which is capital murder.  *See id*. ' 19.03(a)(3) (West 2003).

It is a defense to prosecution that Dow solicited murder because she was induced by a law

enforcement agent, or a person acting in accordance with instructions from an agent, using persuasion or

other means likely to cause a person to commit the offense.  *See id*. ' 8.06 (West 2003).  Entrapment has

both subjective and objective elements.  *England v. State*, 887 S.W.2d 902, 913 (Tex. Crim. App.

1994).  The subjective element requires evidence that Athe accused himself was actually induced to commit

the charged offense by the persuasiveness of the police conduct.@ *Id*. at 913 n.10.  Evidence that a person

has committed a crime before is some evidence that a subsequent commission of the crime was not induced

by police.  *Id*. at 914.  AOnce inducement is shown, the issue becomes whether the persuasion was such as

to cause an ordinarily lawabiding person of average resistance nevertheless to commit the offense.@ *Id*.

With respect to this objective element, prohibited police conduct can include pleas based on extreme need,

sympathy, pity, or close personal friendship, offers of inordinate sums of money, and other methods of

5

persuasion that are likely to cause the otherwise unwilling personC rather than the ready, willing and anxious personC to commit an offense. *Flores v. State*, 84 S.W.3d 675, 682 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d). When there is conflicting evidence on the issue of entrapment, the court does not err in overruling a motion for acquittal and should charge the jury on the defense as a fact issue. *Cook v. State*, 646 S.W.2d 952, 952 (Tex. Crim. App. 1983). If a reasonable doubt exists on a defensive issue, the jury must acquit. *See* Tex. Pen. Code Ann. ' 2.03 (West 2003).

Ample evidence supports the conclusion that Dow was not entrapped into soliciting Peterson=s murder. Witnesses not affiliated with the police investigation testified that, well before the police became involved, Dow wanted to find someone to kill Peterson. Helene Schmidt, Dow=s sister,[3] testified that in 1994 Dow asked her at least three times to kill Peterson; Schmidt thought Dow was joking. Michael Deel, an account manager at Enflite (Dow=s employer for about two weeks), testified that in January 1998 Dow asked him on consecutive days if he knew anyone who would kill Peterson. He said that on the first day he had stopped in her office to introduce himself and had overheard part of an emotional telephone conversation related to her husband; after she hung up the phone and they talked for a bit, she inquired if he knew someone who would kill Peterson. On the second day, Deel testified that Dow said, A[S]eriously, if you know anybody who could take care ofCtake care of him, let me know.@ Edward Thompson, chief operating officer of Enflite, testified that he confronted Dow after another Enflite employee reported that Dow had asked that employee if he knew anyone who Agot rid of people.@ Bishop testified that Dow said on numerous occasions beginning early in their friendship that she wanted Peterson dead and asked if Bishop knew anyone who would do it. Bishop testified that she did not initially contact police and did not take Dow seriously until Dow began describing how she would get the money to pay the killer and how Peterson should be killed. Evidence thus supports the conclusion that, rather than being induced to solicit murder by police, Dow initiated the solicitation.

---

[3] Schmidt is a licensed peace officer who was not part of this investigation.

Dow, however, denied that she initiated the search and insisted that she was persuaded by Bishop and Officer Davis to continue with the plan. Dow admitted that while the divorce proceedings were pending she told many people that she wished Peterson would die or that someone would kill him, but denied that she ever tried to persuade or hire someone to kill him. She said, however, that Davis was the only person she ever asked to kill Peterson. Dow testified that she met with Davis on August 17, 2000 only after Bishop persuaded her that she (Dow) had a moral obligation to do something. Bishop admits that she told Dow that no man who had done what Peterson had done deserved to live. Davis said that Dow appeared to be struggling with what to do and testified that he was ready to leave before she committed to hiring him. When Dow wavered and said she thought maybe Peterson should just be beaten badly, Bishop told her that a beating would not stop him. Even after agreeing to terms with Davis ($1000 down, $3000 total fee), Dow avoided Davis by not delivering the downpayment as scheduled on August 19 and not returning his calls; she explained that she had misplaced her cellular telephone in her truck. When she finally answered a call from Davis on August 23, Dow says he convinced her that she was doing the right thing because she had a moral obligation to do something; this was the only telephone conversation between Dow and Davis that was not recorded.

We conclude that legally sufficient evidence supports the judgment. The evidence that Dow for years asked peopleCincluding her sister, coworkers she had just met, and BishopCto kill or find someone to kill Peterson supports the view that she was not induced by police to solicit Peterson=s murder. The jury was free to choose to believe those witnesses over Dow. That credibility choice could affect deliberations on the rest of the issues as well. A reasonable jury also could have found that a reasonable,

8

law-abiding citizen would not have been induced to solicit murder; the jury could either disbelieve Dow=s version of events or accept it but find the comments by Bishop and Davis were not sufficient to overcome the average resistance of a law-abiding citizen. Viewed most favorably to the verdict, the evidence supports the verdict.

The evidence supporting the verdict justifies the district court=s refusal to dismiss the indictment and the denial of the motion for new trial. We overrule points one and two.

By her remaining twelve points of error, Dow challenges the district court=s exclusion of evidence. The district court excluded certain evidence because it was irrelevant and because any probative value was substantially outweighed by the risk of confusion of issues or misleading the jury. Tex. R. Evid. 401-403. Evidence is relevant if it has any tendency to make the existence of a consequential fact more or less probable. *See id.* 401. If the trial court erroneously excludes evidence, we must determine whether the error was harmless. *See* Tex. R. App. P. 44.2. The exclusion of a defendant=s evidence is constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002); *see also* Tex. R. App. P. 44.2(a). We must reverse for constitutional errors unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a). If relevant evidence is erroneously excluded, but the error does not prevent the defendant from presenting a defense, we examine whether the error affected the defendant=s substantial rights. *See Potier*, 68 S.W.3d at 666; *see also* Tex. R. App. P. 44.2(b). Dow contends that all of the evidence excluded was relevant to and sufficiently probative of whether she was entrapped into soliciting Peterson=s murder.

9

We review a trial court=s decision to exclude evidence under an abuse of discretion standard. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). We will not reverse a trial court=s ruling unless that ruling falls outside the zone of reasonable disagreement. *See Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). To preserve error in the exclusion of evidence, a defendant either may call a witness to the stand outside the presence of the jury and have him answer the specific questions defendant desires, or may make an offer of proof of the questions he would have asked and the answers he expected to receive had he been permitted to question the witness in the presence of the jury. *See Jefferson v. State*, 900 S.W.2d 97, 100 (Tex. App.CHouston [14th Dist.] 1995, no pet.).

Dow first complains about exclusion of evidence that she ignored a previous attempt to induce her to solicit Peterson=s murder. Dow made bills of exceptions through the testimony of Peterson and Woody Edmiston, a private investigator hired by Peterson=s divorce attorney. Edmiston said that he prepared a report given to the Austin Police Department alleging that Dow wanted to hire someone to kill Peterson and recommending an undercover officer approach Dow to elicit a solicitation. Peterson said that he attended a meeting with Austin Police Department officers discussing how such an operation should proceed; Peterson testified that he did not know whether the investigation proceeded. Dow asserted that she could call other witnesses who would testify regarding the existence and failure of the police investigation, but she does not show and we do not find in the record that such witnesses were called. In her testimony before the jury, Dow testified that Peterson=s private investigator hired someone to try to get her to say she wanted her ex-husband killed. That testimony was neither objected to nor excluded.

10

It is not clear that Dow has preserved this complaint for our review through offers of proof. A party can preserve error in the exclusion of evidence by making an offer of proofCa concise summary of anticipated testimony. *Moosavi v. State*, 711 S.W.2d 53, 55 (Tex. Crim. App. 1986). Dow=s attorney summarized anticipated testimony, but did so while asserting he would call witnesses who were not specifically named or called or who, when called, did not provide the asserted testimony.[4] Testifying in bills of exception, neither Peterson nor Edmiston said that any police investigation occurred and was thwarted by Dow=s refusal; rather, Peterson said he did not know if a police investigation occurred.

Dow has another preservation problem. When evidence that is admissible for one purpose but not for another is excluded, the exclusion is not a ground for complaint on appeal unless the proponent

---

[4] While making a bill of exceptions, after examining Woody Edmiston, Dow=s attorney stated as follows:

And by the way, I would tell the Court this, and we can put these witnesses on at another time. As a result of this memo from Mr. Edmiston, Henry Bell, Gary Peterson and Robert Reed went to the Austin Police Department and convinced them to initiate an attempted undercover sting against Laura Peterson. They sought out this man, Michael Jones that is mentioned in this report. They got Michael Jones to call Laura Dow. The story goes that on the first call hisCthe battery on his cell phone went out andC

[Prosecutor]: I=m sorry to object, Judge, but were these matters that were elicited whenever I wasn=t in the room?

[Dow=s attorney]: No, I=m telling the Court that I can present these and I will. I don=t have the witnesses here today, but I=m trying to get the Court to understand our position about the relevance of all this.

It is not clear what witnesses Dow=s attorney intended to call to provide this evidence. Dow called Edmiston and Peterson, but neither provided the predicted testimony. Neither side called either Henry Bell, Michael Jones, or Robert Reed to testify.

11

expressly offers the evidence for its limited admissible purpose. Tex. R. Evid. 105(b). Evidence of Dow=s prior resistance to soliciting murder may be relevant on the subjective aspect of entrapment, but it is irrelevant to the objective issue of whether a reasonable, law-abiding person would have been induced to solicit murder. *See England*, 887 S.W.2d at 914-15. Because Dow did not offer this evidence for the limited purpose of proving subjective inducement, she waived error. *See Wright v. State*, 776 S.W.2d 763, 765 (Tex. App.CCorpus Christi 1989, pet. ref=d).

More important, Dow has shown no harm from the exclusion of the evidence of prior resistance. We have concluded that sufficient evidence supports beyond a reasonable doubt that a reasonable person would not have been induced to solicit murder. Evidence of Dow=s prior resistance is irrelevant to this objective prong of the entrapment test. Thus, Dow was not harmed by the exclusion of the evidence because its exclusion neither prevented Dow from presenting the entrapment defense nor affected her substantial rights. We find no abuse of discretion and overrule point three.

Dow next complains about the exclusion of evidence relating to Peterson=s alleged sexual assaults of their daughters. The court excluded the following evidence: (1) testimony by Dow=s daughters= therapist that the girls reported to her that Peterson sexually assaulted them and threatened to kill Dow and Dow=s mother if the girls told anyone; (2) the therapist=s testimony that she passed the girls= report on to Dow; (3) evidence that Dow sought a protective order against Peterson based on a recommendation by an assistant district attorney who was convinced by videotaped interviews of the girls that Peterson assaulted the girls; (4) testimony by two Child Protective Services workers who found the girls= accusations compelling; and (5) Dow=s testimony that, during her suit for a protective order against Peterson, she

12

learned that (a) Peterson=s attorney=s letter indicating that she had coached the girls in making their assault accusations was presented to the grand jury that declined to indict Peterson on those allegations, and (b) the videotaped interviews of her daughters were not presented to the grand jury.

Although this evidence may have some relevance to entrapment, it is highly inflammatory. Evidence that Peterson sexually assaulted the girls and that the grand jury no-billed him on these charges based on incomplete information may tend to show that Dow was more susceptible to being persuaded to solicit murder. But the evidence instead could support the view that Dow was so enraged that she needed no persuasion to solicit murder and was not induced to do so by police tactics. Evidence that Peterson sexually assaulted their daughters is extremely inflammatory, especially in light of the grand jury=s refusal to indict him for the offenses; the evidence could have misled the jury into considering Peterson=s conduct rather than Dow=s conduct in arriving at its verdict. We cannot say that the district court abused its discretion by concluding that the probativeness of this evidence to show that Dow was entrapped was substantially outweighed by the risk that it would confuse the issues or mislead the jury. We find no abuse of discretion and overrule points of error four through ten.

Finally, Dow complains of the exclusion of her testimony that she was afraid of Peterson, that he appeared at her house with a shotgun, and that he threatened her and her mother. She contends that without this evidence, and without the evidence of the sexual assault allegations, the jury was left with the impression that her hatred of Peterson was irrational. As with the evidence related to his alleged sexual assaults of their children, evidence of his alleged threats may have some relevance to entrapment; however, it is not clear whether the threats make entrapment more likely by making Dow more receptive to police

13

suggestions or less likely by convincing her to seek a murderer irrespective of police suggestions. The

allegations that Peterson threatened violence are inflammatory and could be misleading, especially in light of

the fact that Peterson was acquitted of assault. We find no abuse of discretion and overrule points eleven

through fourteen.

## CONCLUSION

Having overruled all of Dow=s points of error, we affirm the judgment.

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   April 24, 2003

Do Not Publish