**Opinion filed January 6, 2011**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00182-CR

_____

## PABLO GUILLERO ADAME, Appellant

## V.

## STATE OF TEXAS, Appellee

---

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. CCR-08-03106**

---

## MEMORANDUM OPINION

The trial court found Pablo Guillero Adame guilty of possession of methamphetamine, four grams or more but less than 200 grams, sentenced him to confinement for ten years, and assessed a $2,500 fine. We affirm.

### I. *Background Facts*

Adame entered an open plea of guilty to possession of between four and 200 grams of methamphetamine and asked the court to assess his punishment. The trial court ordered a

presentence investigation and, after receipt of that report, conducted an evidentiary hearing. Adame requested probation, but the trial court sentenced him to ten years confinement. Adame filed a motion for new trial and raised allegations of ineffective assistance of counsel. The trial court conducted an evidentiary hearing and denied the motion.

## II. *Issues*

Adame challenges his conviction with six issues, contending that he received constitutionally ineffective assistance of counsel and that the trial court erred by finding him guilty.

## III. *Did Adame Receive Ineffective Assistance of Counsel?*

### A. *Standard of Review*.

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that his lawyer's performance fell below an objective standard of reasonableness and that there is a reasonable probability the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984); *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The purpose of this two-pronged test is to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).

The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Adame must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). When the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable. *Thompson*, 9 S.W.3d at 813. In order to defeat *Strcikland's* presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App.

1996)). We do not inquire into trial strategy unless no plausible basis exists for trial counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771.

### B. Trial Counsel's Advice.

Adame argues initially that his trial counsel incorrectly advised him of the consequences of pleading guilty and of the sentence that could be imposed. Specifically, Adame contends that his counsel advised him that he would be placed on probation if he pleaded guilty; that he did not know the trial court could sentence him to prison; and that, but for these professional errors, he would have gone to trial before a jury. Adame offered his own testimony to support these contentions. That testimony was, however, contradicted by his trial counsel's testimony and by the record.

Trial counsel testified that he told Adame the odds of receiving a probated sentence from a jury were not good, that the State would not recommend a probated sentence, and that his best chance at probation was to plead guilty and go to the court for punishment. He denied promising or guaranteeing probation but, instead, told Adame that the trial court could place him on probation or send him to the penitentiary. Because the court denied Adame's motion for new trial, we assume that it found trial counsel's testimony credible. Appellate courts must afford almost total deference to a trial court's determination of the historical facts and of mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). The trial court could reasonably have found this testimony credible. If so, the court could appropriately have found that counsel properly advised Adame.

Furthermore, Adame was unambiguously warned by the trial court that he faced potential imprisonment. Adame signed a written plea admonishment that specifically advised him that he was charged with a second degree felony and that, if convicted, he could be imprisoned for two to twenty years. And, prior to accepting Adame's plea, the trial court admonished him:

> Q. You are charged by indictment with the offense of possession of controlled substance, felony of the second degree. It has a punishment range of two to twenty years in the penitentiary and a fine of up to ten thousand dollars.
>
> Do you understand that?

3

A. Yes, sir.

Q. How do you plead to that offense?

A. Guilty.

Consequently, there was substantial evidence that Adame was properly advised prior to pleading guilty that he could be imprisoned for up to twenty years. Issue One is overruled.

### C. *The Validity of Adame's Plea.*

Adame next argues that his guilty plea was not made freely, knowingly, and voluntarily. His argument rests upon the contention that trial counsel advised him that he would be placed on probation if he pleaded guilty. Because there was sufficient evidence to conclude that trial counsel properly advised Adame and because the trial court admonished him both orally and in writing that he could be imprisoned for up to twenty years, Issue Two is overruled.

### D. *Adame's Mental Health.*

When Adame pleaded guilty, the trial court asked him if he was thinking clearly and if he had ever been treated for any mental or psychiatric disorder. Adame responded that he was thinking clearly, and he denied being treated for any disorder. The trial court then asked trial counsel if Adame was competent. Counsel advised the court that he was. The trial court found that Adame was competent, approved his jury trial waiver, and ordered a presentence investigation. From that investigation, a report was prepared.

The PSI report indicates that Adame suffers from "ASPERGER SYNDROME (?), A.D.D." At the sentencing hearing, the State asked the trial court to take judicial notice of the PSI report. Trial counsel told the court that he had looked at the report and that he had no objection to it. The trial court informed counsel that he had read the report and that it would be considered as evidence without further testimony. There was no reference to Asperger Syndrome or A.D.D. during the sentencing hearing. During the hearing on Adame's motion for new trial, trial counsel testified that he was unaware Adame had Asperger Syndrome, that he never discussed this with Adame or his family, and that neither Adame nor his mother ever mentioned it.

Adame argues that his trial counsel was ineffective for not investigating and evaluating his mental health in response to the PSI report. Even if we assume that trial counsel was deficient for not noticing and investigating the Asperger Syndrome reference, the record does not

4

indicate that an investigation would have affected the sentencing hearing. We cannot conclude from the report alone if the investigator believed Adame had A.D.D. and possibly also Asperger's, or if he has Asperger's and A.D.D., or if the investigator was unsure from which condition he suffered. Even if we ignore the A.D.D. reference and assume that Adame suffers from Asperger's, the report does not indicate the degree or character of any impairment. We note also that Adame himself was not asked about Asperger's by his current counsel during the motion for new trial hearing and that no witness testified Adame was impaired. Consequently, there was no evidence that an investigation of Adame's mental health would have disclosed any evidence that would have impacted the sentencing hearing. Issue Three is overruled.

*E. Plea Withdrawal.*

Adame next argues that trial counsel was ineffective because he did not attempt to withdraw Adame's guilty plea in response to evidence offered during the sentencing hearing. Adame contends that the evidence demonstrated: (1) that he did not have the requisite mental state to intentionally or knowingly possess a large quantity of methamphetamine and (2) that he was the victim of entrapment.

When Adame pleaded guilty, he signed a stipulation of evidence in which he admitted to intentionally or knowingly possessing between four and 200 grams of methamphetamine. He testified during the sentencing hearing and admitted that he intended to receive a small quantity of methamphetamine from "Angie," a local dealer, but said that he was surprised at the amount alleged in the indictment. Adame testified that he regularly bought drugs from Angie and described his purchases as small, normally $25 to $50. Adame claimed that, on this occasion, he came to Comanche to help Angie with a flat tire. Once there, he met her inside an Allsup's store and took a package from her. He offered no explanation for why or how a trip, ostensibly undertaken to help fix a flat, became a drug transaction inside an Allsup's or what became of the supposed flat tire. Instead, he testified that he took the package thinking it was his usual small quantity, and that he paid Angie $25.

Marie Angela Hernandez, "Angie," also testified. She agreed that she normally sold Adame less than a gram of methamphetamine. On this occasion, however, she was asked by another dealer to go to Fort Worth and pick up a package of methamphetamine, to transport it to Brown County, and then to deliver it to Adame. Angie was pulled over in Comanche County on her way to Brown County. The police noticed that someone was calling her repeatedly and

5

asked her who was calling and why. The calls were from Adame. He admitted making several calls that evening. She said there were twenty-five to twenty-six calls and that, when she was arrested, he was calling every few minutes to check on her. When Angie explained Adame's calls, the police asked her to complete the transaction by meeting him at an Allsup's in Comanche. Adame met her there, took the methamphetamine, and left. She testified that no money exchanged hands. Law enforcement officials observed the transaction and confirmed Angie's testimony. One officer overheard Adame ask if she had the stuff. Angie said yes and handed it to him. He placed the package in his pocket and left the store without paying her.

Adame's testimony is some evidence that he did not have the requisite intent to commit the charged offense. That testimony was, however, contradicted by Angie and by law enforcement officials, and its veracity could be easily challenged by the surrounding circumstances. Moreover, Adame had six prior misdemeanor convictions. Adame clearly wanted probation. The challenge for counsel was how, in light of all of the circumstances, to achieve this. The record reveals trial counsel's strategy. Trial counsel testified at the motion for new trial hearing that, in his opinion, Adame's best chance at receiving probation was to enter an open plea of guilty, take responsibility, and "not have an attitude on the witness stand."

Counsel's decision to not attempt to withdraw the guilty plea in response to Adame's testimony was consistent with this strategy. Counsel could have reasonably concluded that a jury would not believe Adame's testimony that he thought he was only buying a small quantity of methamphetamine. Counsel could also have reasonably concluded that accepting responsibility for wrongdoing would be viewed positively by the trial court. Finally, counsel could have considered that continuing forward would increase the chances of receiving probation because of traditional notions of fairness. Angie was an admitted dealer and was knowingly transporting drugs. Nonetheless, she received probation. If the trial court determined that probation was appropriate for her, it would be logical to infer that the court would at least favorably consider probation for Adame as well. On the other hand, had counsel taken the tact advocated by Adame, he would have placed his client in a potentially riskier, all-or-nothing position. If a jury did not accept his testimony and convicted him of the charged offense, not only would he risk the jury's displeasure from finding his testimony unbelievable, but also his failure to accept responsibility would have been contrasted with Angie's post-arrest actions and

6

the State would have had a strong basis for urging a strict punishment. Trial counsel's decision was, therefore, a sound one.

Nor was counsel ineffective for not attempting to withdraw the plea in order to assert an entrapment defense because the testimony was insufficient to raise that defense. It is a defense to prosecution that the defendant engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause the person to commit the offense. TEX. PENAL CODE ANN. § 8.06(a) (Vernon 2003). Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment. *Id.* The entrapment defense consists of two tests. The first is subjective. Would the defendant, but for the police's inducing conduct, have committed the crime? *England v. State*, 887 S.W.2d 902, 910 (Tex. Crim. App. 1994). The second test is objective. Was the law enforcement agent's conduct such as to cause an ordinarily law-abiding person of average resistance nevertheless to commit the offense? *Id.*

There was no evidence that Adame had any contact with a law enforcement official prior to his arrest, let alone evidence that he was persuaded by law enforcement officials to commit a criminal offense. The mere fact that they encouraged and allowed Angie to complete the transaction is no evidence of entrapment. Moreover, Adame's testimony denying the culpable mental state to commit the charged offense would have precluded an entrapment instruction. *See Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (when the defensive evidence negates the culpable mental state, the defendant is not entitled to a defensive instruction; such an instruction is appropriate only when the defendant essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct). Issues Four and Five are overruled.

IV. *Did the Trial Court Err by Finding Adame Guilty of the Charged Offense?*

Adame contends that the trial court erred by finding him guilty of the charged offense because he did not have the requisite mental state. As noted, Adame testified that he only intended to secure a small amount of methamphetamine from Angie. The trial court, however, also had evidence that Angie was transporting methamphetamine from Fort Worth to Brown County, that she was to deliver those drugs to Adame, that Adame called her a number of times that night and every few minutes before they met to check on her, and that when they met in

Allsup's he asked if she had the stuff and then took a package from her without paying for it. This evidence is sufficient to support the trial court's determination. Issue Six is overruled.

## V. *Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


January 6, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.