Opinion filed January 6,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00182-CR

                                                    __________

 

 

                            PABLO
GUILLERO ADAME, Appellant

                                                          
V.

                                      
STATE OF TEXAS, Appellee

 



 

                                   On
Appeal from the 220th District Court

 

                                                        Comanche
County, Texas

 

                                              Trial Court
Cause No. CCR-08-03106

 



 

M
E M O R A N D U M   O P I N I O N

The
trial court found Pablo Guillero Adame guilty of possession of methamphetamine,
four grams or more but less than 200 grams, sentenced him to confinement for
ten years, and assessed a $2,500 fine.  We affirm.

I.  Background
Facts

Adame
entered an open plea of guilty to possession of between four and 200 grams of
methamphetamine and asked the court to assess his punishment. The trial court
ordered a presentence investigation and, after receipt of that report,
conducted an evidentiary hearing. Adame requested probation, but the trial
court sentenced him to ten years confinement.  Adame filed a motion for new
trial and raised allegations of ineffective assistance of counsel.  The trial
court conducted an evidentiary hearing and denied the motion.

II. 
Issues

Adame
challenges his conviction with six issues, contending that he received
constitutionally ineffective assistance of counsel and that the trial court
erred by finding him guilty.

III. 
Did Adame Receive Ineffective Assistance of Counsel?

A.    
 Standard of Review.

To prevail on a claim of ineffective assistance of counsel, an appellant
must establish that his lawyer’s performance fell below an objective standard
of reasonableness and that there is a reasonable probability the result of the
proceeding would have been different but for counsel’s deficient performance.  Strickland v. Washington, 466 U.S. 668, 693-94 (1984); Mallett v. State, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001).  A reasonable probability is a probability
sufficient to undermine confidence in the outcome of the trial.  Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The purpose of this two-pronged test is to judge
whether counsel’s conduct so compromised the proper functioning of the
adversarial process that the trial cannot be said to have produced a reliable
result. Thompson v. State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).

The review of defense counsel’s
representation is highly deferential and presumes that counsel’s actions fell
within a wide range of reasonable professional assistance.  Tong v.
State, 25 S.W.3d 707, 712 (Tex. Crim. App.
2000).  Adame must overcome the presumption that, under the
circumstances, the challenged action might be considered sound trial strategy. Jackson v.
State, 877 S.W.2d 768 (Tex. Crim. App. 1994);
Hayden v.
State, 155 S.W.3d 640, 648 (Tex. App.—Eastland
2005, pet. ref’d).  When the record is silent on the motivations
underlying counsel’s tactical decisions, the appellant usually
cannot overcome the strong presumption that counsel’s conduct was reasonable.  Thompson, 9 S.W.3d at 813.  In order to defeat Strcikland’s
presumption of reasonable professional assistance, “any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.” Id. at 814 (quoting McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996)). We do not inquire into trial strategy unless no plausible
basis exists for trial counsel’s actions.  Johnson v.
State, 614 S.W.2d 148, 152 (Tex. Crim. App.
1981).  When the record contains no evidence of the reasoning behind
trial counsel’s actions, we cannot conclude that counsel’s performance was
deficient.  Jackson, 877 S.W.2d at 771.

B.    
 Trial Counsel’s Advice.

Adame
argues initially that his trial counsel incorrectly advised him of the
consequences of pleading guilty and of the sentence that could be imposed.  Specifically,
Adame contends that his counsel advised him that he would be placed on
probation if he pleaded guilty; that he did not know the trial court could
sentence him to prison; and that, but for these professional errors, he would
have gone to trial before a jury.  Adame offered his own testimony to support
these contentions.  That testimony was, however, contradicted by his trial
counsel’s testimony and by the record.

Trial
counsel testified that he told Adame the odds of receiving a probated sentence
from a jury were not good, that the State would not recommend a probated
sentence, and that his best chance at probation was to plead guilty and go to the
court for punishment.  He denied promising or guaranteeing probation but,
instead, told Adame that the trial court could place him on probation or send
him to the penitentiary.  Because the court denied Adame’s motion for new
trial, we assume that it found trial counsel’s testimony credible. Appellate
courts must afford almost total deference to a trial court’s determination of
the historical facts and of mixed questions of law and fact that turn on an
evaluation of credibility and demeanor.  Kober v. State, 988 S.W.2d 230,
233 (Tex. Crim. App. 1999).  The trial court could reasonably have found this
testimony credible.  If so, the court could appropriately have found that counsel
properly advised Adame.

Furthermore,
Adame was unambiguously warned by the trial court that he faced potential
imprisonment.  Adame signed a written plea admonishment that specifically advised
him that he was charged with a second degree felony and that, if convicted, he
could be imprisoned for two to twenty years.  And, prior to accepting Adame’s
plea, the trial court admonished him:

            Q.  You
are charged by indictment with the offense of possession of controlled
substance, felony of the second degree.  It has a punishment range of two to
twenty years in the penitentiary and a fine of up to ten thousand dollars.

 

           Do you
understand that?

 

            A. 
Yes, sir.

 

            Q.  How
do you plead to that offense?

 

            A. 
Guilty.

 

 Consequently,
there was substantial evidence that Adame was properly advised prior to
pleading guilty that he could be imprisoned for up to twenty years.  Issue One
is overruled.

C. 
The Validity of Adame’s Plea.

Adame
next argues that his guilty plea was not made freely, knowingly, and
voluntarily.  His argument rests upon the contention that trial counsel advised
him that he would be placed on probation if he pleaded guilty.  Because there
was sufficient evidence to conclude that trial counsel properly advised Adame
and because the trial court admonished him both orally and in writing that he
could be imprisoned for up to twenty years, Issue Two is overruled.

D. 
Adame’s Mental Health.

When
Adame pleaded guilty, the trial court asked him if he was thinking clearly and
if he had ever been treated for any mental or psychiatric disorder.  Adame
responded that he was thinking clearly, and he denied being treated for any
disorder.  The trial court then asked trial counsel if Adame was competent. 
Counsel advised the court that he was.  The trial court found that Adame was
competent, approved his jury trial waiver, and ordered a presentence
investigation.  From that investigation, a report was prepared.

The
PSI report indicates that Adame suffers from “ASPERGER SYNDROME (?), A.D.D.”  At
the sentencing hearing, the State asked the trial court to take judicial notice
of the PSI report.  Trial counsel told the court that he had looked at the
report and that he had no objection to it.  The trial court informed counsel
that he had read the report and that it would be considered as evidence without
further testimony.  There was no reference to Asperger Syndrome or A.D.D.
during the sentencing hearing.  During the hearing on Adame’s motion for new
trial, trial counsel testified that he was unaware Adame had Asperger Syndrome,
that he never discussed this with Adame or his family, and that neither Adame
nor his mother ever mentioned it.

Adame
argues that his trial counsel was ineffective for not investigating and
evaluating his mental health in response to the PSI report.  Even if we assume
that trial counsel was deficient for not noticing and investigating the
Asperger Syndrome reference, the record does not indicate that an investigation
would have affected the sentencing hearing.  We cannot conclude from the report
alone if the investigator believed Adame had A.D.D. and possibly also
Asperger’s, or if he has Asperger’s and A.D.D., or if the investigator was
unsure from which condition he suffered.  Even if we ignore the A.D.D.
reference and assume that Adame suffers from Asperger’s, the report does not
indicate the degree or character of any impairment.  We note also that Adame
himself was not asked about Asperger’s by his current counsel during the motion
for new trial hearing and that no witness testified Adame was impaired. 
Consequently, there was no evidence that an investigation of Adame’s mental
health would have disclosed any evidence that would have impacted the
sentencing hearing.  Issue Three is overruled.

E. 
Plea Withdrawal.

Adame
next argues that trial counsel was ineffective because he did not attempt to
withdraw Adame’s guilty plea in response to evidence offered during the
sentencing hearing.  Adame contends that the evidence demonstrated:  (1) that
he did not have the requisite mental state to intentionally or knowingly
possess a large quantity of methamphetamine and (2) that he was the victim of
entrapment.

When
Adame pleaded guilty, he signed a stipulation of evidence in which he admitted
to intentionally or knowingly possessing between four and 200 grams of
methamphetamine.  He testified during the sentencing hearing and admitted that
he intended to receive a small quantity of methamphetamine from “Angie,” a
local dealer, but said that he was surprised at the amount alleged in the
indictment.  Adame testified that he regularly bought drugs from Angie and described
his purchases as small, normally $25 to $50.  Adame claimed that, on this
occasion, he came to Comanche to help Angie with a flat tire.  Once there, he
met her inside an Allsup’s store and took a package from her.  He offered no
explanation for why or how a trip, ostensibly undertaken to help fix a flat,
became a drug transaction inside an Allsup’s or what became of the supposed
flat tire.  Instead, he testified that he took the package thinking it was his
usual small quantity, and that he paid Angie $25.

Marie
Angela Hernandez, “Angie,” also testified.  She agreed that she normally sold
Adame less than a gram of methamphetamine.  On this occasion, however, she was
asked by another dealer to go to Fort Worth and pick up a package of
methamphetamine, to transport it to Brown County, and then to deliver it to
Adame.  Angie was pulled over in Comanche County on her way to Brown County.  The
police noticed that someone was calling her repeatedly and asked her who was
calling and why.  The calls were from Adame.  He admitted making several calls
that evening.  She said there were twenty-five to twenty-six calls and that,
when she was arrested, he was calling every few minutes to check on her.  When
Angie explained Adame’s calls, the police asked her to complete the transaction
by meeting him at an Allsup’s in Comanche.  Adame met her there, took the methamphetamine,
and left.  She testified that no money exchanged hands.  Law enforcement
officials observed the transaction and confirmed Angie’s testimony.  One
officer overheard Adame ask if she had the stuff.  Angie said yes and handed it
to him.  He placed the package in his pocket and left the store without paying
her.

Adame’s
testimony is some evidence that he did not have the requisite intent to commit
the charged offense. That testimony was, however, contradicted by Angie and by
law enforcement officials, and its veracity could be easily challenged by the
surrounding circumstances.  Moreover, Adame had six prior misdemeanor
convictions.  Adame clearly wanted probation.  The challenge for counsel was
how, in light of all of the circumstances, to achieve this.  The record reveals
trial counsel’s strategy.  Trial counsel testified at the motion for new trial
hearing that, in his opinion, Adame’s best chance at receiving probation was to
enter an open plea of guilty, take responsibility, and “not have an attitude on
the witness stand.”

Counsel’s
decision to not attempt to withdraw the guilty plea in response to Adame’s
testimony was consistent with this strategy.  Counsel could have reasonably
concluded that a jury would not believe Adame’s testimony that he thought he
was only buying a small quantity of methamphetamine.  Counsel could also have reasonably
concluded that accepting responsibility for wrongdoing would be viewed
positively by the trial court.  Finally, counsel could have considered that
continuing forward would increase the chances of receiving probation because of
traditional notions of fairness.  Angie was an admitted dealer and was
knowingly transporting drugs.  Nonetheless, she received probation.  If the
trial court determined that probation was appropriate for her, it would be
logical to infer that the court would at least favorably consider probation for
Adame as well.  On the other hand, had counsel taken the tact advocated by
Adame, he would have placed his client in a potentially riskier, all-or-nothing
position.  If a jury did not accept his testimony and convicted him of the
charged offense, not only would he risk the jury’s displeasure from finding his
testimony unbelievable, but also his failure to accept responsibility would
have been contrasted with Angie’s post-arrest actions and the State would have
had a strong basis for urging a strict punishment.  Trial counsel’s decision
was, therefore, a sound one. 

Nor
was counsel ineffective for not attempting to withdraw the plea in order to
assert an entrapment defense because the testimony was insufficient to raise that
defense.  It is a defense to prosecution that the defendant engaged in the
conduct charged because he was induced to do so by a law enforcement agent
using persuasion or other means likely to cause the person to commit the
offense.  Tex. Penal Code Ann. §
8.06(a) (Vernon 2003). Conduct merely affording a person an opportunity to
commit an offense does not constitute entrapment.  Id.  The entrapment
defense consists of two tests.  The first is subjective.  Would the defendant,
but for the police’s inducing conduct, have committed the crime?  England v.
State, 887 S.W.2d 902, 910 (Tex. Crim. App. 1994).  The second test is
objective.  Was the law enforcement agent’s conduct such as to cause an
ordinarily law-abiding person of average resistance nevertheless to commit the
offense?  Id.  

There
was no evidence that Adame had any contact with a law enforcement official
prior to his arrest, let alone evidence that he was persuaded by law
enforcement officials to commit a criminal offense.  The mere fact that they
encouraged and allowed Angie to complete the transaction is no evidence of
entrapment.  Moreover, Adame’s testimony denying the culpable mental state to
commit the charged offense would have precluded an entrapment instruction.  See
Shaw v. State, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (when the
defensive evidence negates the culpable mental state, the defendant is not
entitled to a defensive instruction; such an instruction is appropriate only
when the defendant essentially admits to every element of the offense including
the culpable mental state, but interposes the justification to excuse the
otherwise criminal conduct).  Issues Four and Five are overruled.

IV. 
Did the Trial Court Err by Finding Adame Guilty of the Charged Offense?

Adame
contends that the trial court erred by finding him guilty of the charged
offense because he did not have the requisite mental state.  As noted, Adame
testified that he only intended to secure a small amount of methamphetamine
from Angie.  The trial court, however, also had evidence that Angie was
transporting methamphetamine from Fort Worth to Brown County, that she was to
deliver those drugs to Adame, that Adame called her a number of times that
night and every few minutes before they met to check on her, and that when they
met in Allsup’s he asked if she had the stuff and then took a package from her
without paying for it.  This evidence is sufficient to support the trial
court’s determination.  Issue Six is overruled.

V.  Conclusion

The
judgment of the trial court is affirmed.  

                                                                              

            

RICK STRANGE

                                                                                    JUSTICE

 

January 6, 2011

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.